**Walter M. HINTON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18829.**

United States Court of Appeals
District of Columbia Circuit.

March 17, 1965.

Mr. Robert B. Frank, Washington, D. C. (appointed by this court), was on the pleadings for appellant.

Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the pleadings for appellee.

Before BAZELON, Chief Judge, and WRIGHT and McGOWAN, Circuit Judges, in Chambers.

ORDER

PER CURIAM.

On further consideration of appellant's motion for reduction of bail pending ap-

---

peal, and of appellee's opposition thereto, and on consideration of the memorandum of District Court Judge Youngdahl, 238 F.Supp. 230, filed pursuant to the order of remand entered herein on January 21, 1965, it is

ORDERED by the Court that appellant's motion for reduction of bail is denied.

BAZELON, Chief Judge (dissenting):

Appellant was convicted of robbery and simple assault. The District Court granted leave to appeal in forma pauperis and admitted appellant to bail pending appeal with bond at $3,000.[1] Appellant alleges that neither he nor his family can provide the premium for a bond in excess of $600. We remanded the record in this case to the District Court.

"with the request that [it] advise as to the considerations and reasons which led [it]: (1) to seem to find that appellant was a fit subject to be released on bail pending appeal and (2) notwithstanding to set bail in the amount of $3,000.00 in order to 'insure the presence of the defendant,' Rule 46(c), Fed.R.Crim.P., when it appeared from the record that appellant was unable to furnish bail in that amount."

The District Court replied as follows:

"When the issue of bail pending appeal was presented to the Court, the initial consideration, in view of appellant's uncontroverted declaration of indigency, was whether he was a fit subject for release on his own recognizance. While this Court favors release on personal bond whenever it may be justified, the relevant factors in this case precluded such disposition in the Court's judgment.

"The most significant considerations which generated the Court's decision to deny personal bond were the defendant's unemployment at the time of arrest and his general history of unemployment; the defendant's lack of substantial family ties in the community (he is unmarried); the defendant's prior criminal and juvenile records, which include a number of acts of violence and a failure to discharge the responsibilities and take advantage of the opportunities of probationary supervision of the Juvenile Court; the fact that this nineteen-year old faced a substantial period of confinement, albeit at the Youth Center; the fact that, in the Court's opinion, the evidence weighed very heavily against the defendant; and finally, the absence of any other substantial ties with the local community to counterbalance these negative factors.

"Having determined that this defendant could not justifiably be released on his personal bond pending appeal, the question then became whether to deny bail altogether, or to set bond in such an amount that *if it could be raised,* the Court could feel reasonably assured, in the circumstances, that defendant's presence would be insured. The Court then believed, and continue to believe upon reconsideration at this time, that bail in the amount of $3,000, if it could be raised by this indigent defendant, would be sufficient to warrant his release pending appeal. Although it may appear inconsistent to set a monetary bond for an indigent, it has been the Court's experience that indigent defendants are often in the community on bond, having obtained the means therefor from family or friends.

The fact that others in the community have come to a defendant's aid seems to the Court to create a new tie or contact with the community which *tends* to insure the presence of the defendant. The defendant's obligation is then not only to the Court but to those who financed his bond. In this case, if

---

1. Pre-trial bond, set at $10,000, had not been posted.

this new tie to the community could be created, and added to the fact that the defendant has always lived in the District and has never been known to 'jump bail,' plus the always present prospect of apprehension, this would be enough, in the Court's judgment, to justify his release pending appeal with reasonable assurance that he would respond when necessary.

"It seems more just to leave open the possibility of release by setting some bond which, if raised, should satisfy the Court and the community that it will serve a purpose, than to take the alternative of denying bond altogether, particularly where the issue of fitness for bond pending appeal is as close a question as it is in this case."

If appellant's family or friends were able to provide the $3,000 bail without a bondsman, then it may be that Hinton would have an "obligation" to them not to flee. But if, as is more likely, the bail must be furnished by a bondsman, his premium is not refundable whether appellant appears or flees. Hence Hinton's family or friends would not be affected if he flees. They would be affected, for example, if they were required to post collateral with the bondsman.[2] But the court did not inquire whether collateral would be required[3] so that "a new tie to the community would be created" by Hinton's sense of "obligation * * * to those who financed his bond."

Moreover, it seems to me that a stronger tie than a sense of obligation to those who paid for his bond might be created if the court attempted to impress Hinton's family or friends with the importance of their representations of trust that Hinton would appear and their willingness to assist in insuring that he will.

I would hold this motion in abeyance, and remand the record to the District Court for further inquiry and findings of fact, as required by this opinion, to aid our determination of whether bail was "set at a figure higher than an amount reasonably calculated to" insure appellant's presence. Stack v. Boyle, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3 (1951). In lieu of such inquiry, the District Court could, if it chose, reconsider its previous determination setting bail at $3,000.

---

2. But see Pannell v. United States, 115 U.S.App.D.C. 379, 383, 320 F.2d 698, 702 (1963) (separate opinion): "If collateral is required, the bondsman will have little or no stake in appellant's compliance."

3. See my opinions in Hairston v. United States, 120 U.S.App.D.C. ——, 343 F.2d 313, decided Feb. 2, 1965; and Pelletier v. United States, 120 U.S.App.D.C. ——, 343 F.2d 322, decided Feb. 16, 1965.