**Paul W. REEVES, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. 683.**

Supreme Court of Alaska.

Feb. 25, 1966.

---

R. Stanley Ditus, Stanley J. McCutcheon, Arthur D. Talbot, Anchorage, for petitioner.

John K. Brubaker, Dist. Atty., Thomas E. Curran, Jr., Asst. Dist. Atty., Anchorage, for respondent.

Before NESBETT, C. J., DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

Petitioner seeks review of the superior court's denial of his motion to be released on his own recognizance pending trial. Petitioner asserts that under AS 12.30.010 of the Alaska Code of Criminal Procedure, Article I, Sections 1, 11 and 12 of the Alaska Constitution, and under the Fourteenth Amendment to the United States Constitution he has, by virtue of his indigency, an absolute right to be released on his own recognizance prior to trial.[1] We hold that an indigent defendant does not have an absolute right to be released on his own recognizance prior to trial and that the superior court did not err in denying petitioner's motion.

---

1. AS 12.30.010 provides:
      The defendant is entitled to be admitted to bail before conviction, as a matter of right.
   Alaska Const. art. I, § 1 provides:
      *Inherent Rights.* This constitution is dedicated to the principles * * * that all persons are equal and entitled to equal rights, opportunities, and protection under the law * * *.

   Alaska Const. art. I, § 11 provides:
      *Rights of Accused.* In all criminal prosecutions * * *. The accused is entitled * * * to be released on bail, except for capital offenses when the proof is evident or the presumption great; * * *.
   Alaska Const. art. I, § 12 provides:
      *Excessive Punishment.* Excessive bail shall not be required * * *.

On June 16, 1965, a four count indictment was filed in the lower court charging petitioner with the crimes of first degree murder, burglary and robbery.[2] At the time this indictment was filed the court set bail in the amount of $50,000.00. Thereafter, on October 6, 1965, petitioner filed a "Motion for Order Releasing Defendant on His Own Recognizance, Without Posting Bail."[3]

In his motion, petitioner contended that since he was without funds and had been adjudged indigent, AS 12.30.010, the Alaska Constitution, and the Fourteenth Amendment to the United States Constitution granted him the right to be released on his own recognizance.[4]

In opposition to petitioner's motion, the state filed a copy of the complaint which Charles Anderson of the Anchorage Police Department initially filed against petitioner. The complaint states in part that it

is based on the statements of Paul W. Reeves to Charles Anderson that he shot Dora Anderson and the statements of Yvonne Marshall that Paul W. Reeves told her that he shot Dora Anderson while burglarizing the residence of said Dora Anderson.

The state also filed an affidavit of officer Mark Hogan of the Anchorage Police Department in opposition to petitioner's motion. Mr. Hogan's affidavit stated that his investigation revealed that petitioner was in Alaska from June 1964, until January 1965, at which time petitioner left Alaska and did not return until May 25, 1965. The officer's affidavit further stated that petitioner was not gainfully employed during the period of May 25, 1965, through June 8, 1965, that the petitioner does not have any relatives or close friends residing in Alaska, and that petitioner does not own any real property within the State of Alaska.[5]

It is also pertinent to note that during oral argument on petitioner's motion, Judge Moody stated in part:

Can you and I agree on the philosophy of what the bond is for? A bond is to insure their presence, and I believe that I can state without equivocation that my philosophy is, that if you can show a person is going to be—has reason to be present, then I'll release him on his own recognizance.

* * * Now I have indicated it before and will indicate again, that this Court, under the law of Alaska feels that it can release anybody, if you can make a showing to the Court, that the man is not going * * * that the man is going to be present for trial. That's the only requirement. * * *

Also relevant to our disposition of this matter is the following exchange which

2. The indictment contains two alternative counts of first degree murder (felony murder) pertaining to the killing of Dora Anderson on June 7, 1965. AS 11.15.010 provides that first degree murder is punishable by imprisonment at hard labor for life or for any term of years.

3. In the period between June 16, 1965, and October 6, 1965, court appointed counsel for petitioner obtained orders for both medical and psychiatric examinations of petitioner. After a hearing held on September 17, 1965, the superior court determined that the petitioner was competent to assist in his own defense and understood the charges against him.
The record further discloses that on June 30, 1965, R. Stanley Ditus, who at the time was petitioner's sole court appointed counsel, made an oral motion to reduce bail to $5,000.00. The superior court then requested Mr. Ditus to submit a formal motion for reduction of bail. Examination of the record shows that no formal motion for reduction of bail was ever filed.

4. Petitioner asserts that the Equal Protection Clause of the Fourteenth Amendment and Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891 (1956), entitle him to be released on his own recognizance.

5. Officer Hogan's affidavit was not controverted by petitioner.

occurred between the court and petitioner's co-counsel:

> MR. TALBOT: You don't have to rule that every indigent is entitled to relief in order to do something for Paul Reeves here. * * *
>
> THE COURT: But have you made a showing here as to why the Court should release him? Isn't the sole thrust here been—of yours been, in regard to, as a general class, no one should have to do it if they are indigent?
>
> MR. TALBOT: That's true, and I don't retreat one inch from that position. * * * [6]

After taking the matter under advisement, Judge Moody rendered an oral opinion in which he stated in part:

> But I hold in this case that the defendant has failed to meet the requirements of showing that he is—can reasonably be expected to appear at proceedings * * * prior to and at the trial since he has only been, according to the affidavit which is unopposed, he's been in the State * * * less than three months at the time this crime was committed. He has no relatives here. He has no job. He has no place to stay. Mr. Talbot, true, has indicated he could help get him a job; he would help to get him a place to stay. And once that is presented to the Court that might throw an entirely different * * * situation on the Court's position in this matter. But I hold at this time that there's no such assurance to this Court that he is going to be present at the time. Now, I will * * * consider this also as

a motion for reduction of bail and I will reduce the bail to $10,000.00 instead of $50,000.00.

As indicated at the outset, we are of the opinion that the trial court correctly denied petitioner's motion for release on his own recognizance. We hold that an indigent defendant does not have an absolute right to pretrial release on his own recognizance. We cannot find that such pretrial release for all indigent defendants is required by any provisions of our Criminal Code or under the federal constitution or the Alaska constitution.

In Pilkinton v. Circuit Court,[7] a contention similar to that advanced by petitioner in this proceeding was made. In *Pilkinton* appellant urged that the Eighth Amendment granted him the right to be released on his own recognizance. In rejecting appellant's contention, the court in *Pilkinton* stated:

> It is to be borne in mind, however, that the prohibition is only against requiring excessive bail. It does not afford a basis for one accused of crime to insist that he is entitled to be released entirely without bail or wholly on his own recognizance. The language of the Amendment is not subject to being construed as providing such a guarantee. A State may properly require bail in some amount, and the mere fact that an accused is unable to furnish it in any sum, and so wants to be released on his own recognizance, does not present a federal question.
>
> The extent of an accused's ability to furnish bail is, of course, a factor which may be duly weighed, but it is.

6. The following similar exchange also took place:

> THE COURT: It is my understanding here that you have made application here only on the basis that this is a violation of his constitutional rights. You have not made application here based upon his particular circumstances, or the fact that he's a good risk to be present for trial. * * * * * * the main thrust of yours has been to his constitutional ground, rather than to his individual situation that he's a good risk, it is not?
>
> MR. TALBOT: Yes, indeed. * * *

7. 324 F.2d 45, 46 (8th Cir. 1963).

not the measure of the court's power of discretion. That power is exercisable in relation to all the considerations and objects which have traditionally underlain the concept of bail.

Excessiveness of bail as a question of abuse of discretion and constitutional violation is accordingly one which must have more basis of circumstance than that an accused is without accumulation, standing, or responsibility sufficient to enable him to furnish any bail, and more substance of contention than that he therefore is entitled to liberty on his own recognizance.[8]

In our opinion, the rationale of the *Pilkinton* case is sound and dispositive of petitioner's contention in this proceeding.

The purpose of bail in the administration of criminal justice is to insure the defendant's appearance at trial. Mr. Chief Justice Vinson made this clear in Stack v. Boyle [9] where he wrote:

The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. Ex parte Milburn [U.S.] 9 Pet. 704, 710, 9 L.Ed. 280, 282 [1835]. Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is 'excessive' under the Eighth Amendment. * * *

*Since the function of bail is limited, the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant.*[10] (Emphasis supplied.)

Under the present system of bail operative throughout most of the United States, the position of the indigent defendant who cannot raise bail poses a serious problem. In regard to this aspect of bail, Mr. Justice Douglas wrote:

This traditional right to freedom during trial and pending judicial review has to be squared with the possibility that the defendant may flee or hide himself. Bail is the device which we have borrowed to reconcile these conflicting interests. * * * It is assumed that the threat of forfeiture of one's goods will be an effective deterrent to the temptation to break the conditions of one's release.

But this theory is based on the assumption that a defendant has property. To continue to demand a substantial bond which the defendant is unable to secure raises considerable problems for the equal administration of the law. We have held that an in-

---

8. Supra note 7, at 46. The Eighth Amendment provides: "Excessive bails shall not be required * * *." See also White v. United States, 330 F.2d 811, 814 (8th Cir.), cert. denied, 379 U.S. 855, 85 S.Ct. 105, 13 L.Ed.2d 58 (1964).
   Petitioner's reliance on Hoffman v. State, 404 P.2d 644 (Alaska 1965), is not persuasive here. In Hoffman we held that AS 12.55.110 granted an indigent probationer the right to court appointed counsel in a probation revocation proceeding.

9. 342 U.S. 1, 4–5, 72 S.Ct. 1, 3–4, 96 L.Ed. 3, 6–7 (1951).

10. Under the provisions of Crim.R. 41(b) standards have been articulated for de-

termination of the amount of bail necessary to insure the presence of the defendant. This rule of criminal procedure, which was derived from Rule 46(c), Federal Rules of Criminal Procedure, provides:

If the defendant is admitted to bail, the amount thereof shall be such as in the judgment of the magistrate or court or judge or justice will insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant.

digent defendant is denied equal protection of the law if he is denied an appeal on equal terms with other defendants, solely because of his indigence. Griffin v. [People of State of] Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. * * *

It would be unconstitutional to fix excessive bail to assure that a defendant will not gain his freedom. * * * Yet in the case of an indigent defendant, the fixing of bail in even a modest amount may have the practical effect of denying him release. * * *

*In the light of these considerations, I approach this application with the conviction that the right to release is heavily favored and that the requirement of security for the bond may, in a proper case, be dispensed with.* Rule 46(d) indeed provides that 'in proper cases no security need be required.' *For there may be other deterrents to jumping bail: long residence in a locality, the ties of friends and family,* *the efficiency of modern police. All these in a given case may offer a deterrent at least equal to that of the threat of forfeiture.*[11] (Emphasis supplied.)

A study of the trial judge's comments made at oral argument and of his oral decision in regard to petitioner's motion discloses that he was acutely aware of the indigent's problems in regard to bail and that he perceptively applied the standards set forth in Crim.R. 41(b). Despite the frequent and unequivocal statements on the part of the trial judge that he was willing to explore and apply alternatives to the furnishing of bail, counsel for petitioner grounded their motion on the sole contention that an indigent defendant has the right to be released on his own recognizance under all circumstances.[12]

In light of the record in this matter, and for the foregoing reasons, the order of the superior court denying petitioner's motion for release on his own recognizance is affirmed.[13]

---

11. Bandy v. United States, 81 S.Ct. 197, 5 L.Ed.2d 218, 219–220 (1960). Compare: United States v. Hinton, 238 F.Supp. 230–231 (D.D.C.), *upheld denying motion to reduce bail* 120 U.S.App.D.C. 158, 344 F.2d 543, 544 (1965).

12. In the concluding paragraph of petitioner's brief in this court, it is requested that:

The Superior Court's minute order of November 1, 1965 should be reversed and set aside, and this cause remanded to the Superior Court with instructions to inquire diligently as to what bail the defendant is able to raise, and with instructions to set bail at such a figure that defendant will be able to raise it, and be released on bail, as is petitioner's right under Article 1, § 11 of the Constitution of Alaska, and under the Equal Protection Clauses of the Constitutions of Alaska and the United States.

Since petitioner did not request this relief in the lower court, we will not consider this aspect of the petition. Our disposition of the petitioner's review is without prejudice to the making of further motions by petitioner in regard to bail upon remand.

13. The issue presented in this proceeding is a narrow one. We are not unaware of the studies and experimental projects which have been and are being conducted in this area of the law. See generally Freed and Wald, Bail In The United States: 1964; The Manhattan Bail Project: An Interim Report on the Use of Pre-Trial Parole, 38 N.Y.U.L.Rev. 67 (1963); Bail Reform Act of 1965, S. 1357, which has been passed by the United States Senate.