Max Ray MARTIN et al., Appellants,

v.

STATE of Alaska, Appellee.

No. 1785.

Supreme Court of Alaska.

Jan. 2, 1974.

Herbert D. Soll, Public Defender, Larry A. Jordan, Asst. Public Defender, Anchorage, for appellants.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Jr., Dist. Atty., Anchorage, Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

FITZGERALD, Justice.

These cases come to us as a consolidated appeal seeking declarations of the rights of the defendant in criminal proceedings to bail under the constitution and laws of Alaska and the constitution of the United States. Although the factual circumstances of each case are somewhat different, all three cases challenge the concept of preventive detention.

On June 7, 1972, appellant Richard Snyder was arraigned in the superior court on a charge of forgery. At the time of this arraignment, Snyder was free on bail following three indictments issued previously on other charges.[1]

At his arraignment and at a later hearing for plea, Snyder requested the court to set bail on the forgery charge. The trial court refused to set bail finding that Snyder was "a danger to society." On August 10, 1972, a notice of appeal was filed on the decision denying bail. However, on November 9, 1972, the court on the motion of the prosecutor dismissed the forgery charge against Snyder.[2]

Appellant Max Martin was arraigned August 3, 1972 in the superior court on a petition to revoke probation. Almost two years earlier, Martin had been convicted of larceny in a building. For that offense he received a five-year sentence, but four years were suspended upon conditions of probation.

At his arraignment and at a hearing four days later, Martin requested the court to set bail for his release pending the revocation hearing. The court refused to set bail, reasoning that there was a high probability of truth in the allegations, and that it was within the court's discretion to deny bail after conviction.

Notice of appeal from the denial of bail was filed on August 10, 1972. On September 18, 1972, Martin's probation was revoked, and he was ordered to serve the remaining four years on his larceny conviction.

Appellant Aloyisus Fabian was arraigned in the superior court on May 18, 1972, on a charge of burglary not in a dwelling. Following arraignment, he was released on his own recognizance to participate in the Salvation Army alcoholic rehabilitation program. On May 25, 1972, the state moved

---

1. The appellant was charged in a four-count federal indictment for conspiracy, robbery, and possession of firearms by a convicted felon, a one-count Alaska indictment for burglary not in a dwelling, and a nine-count Alaska indictment for burglary not in a dwelling. Both state indictments postdated the alleged date for commission of the forgery.

2. On September 14, 1972, Snyder filed a motion *pro se* with this court requesting release on his own recognizance. By order dated November 17, 1972, Justice Boochever denied the motion on the basis that the intervening dismissal of charges rendered the question moot.

that Fabian's recognizance release be revoked, and that bail be set at $500 because he was no longer participating in the Salvation Army program. Fabian, through his counsel, admitted violating the conditions of his release but requested to be released again on recognizance, contending that his financial status would make any bail amount prohibitive.

Rejecting the suggestion that Fabian reenroll at the Salvation Army, the court offered to release him to the custody of the Anchorage Native Program for Alcoholic and Drug Abuse. Fabian's counsel agreed to attempt to enroll him in the native program, and the appellant was incarcerated in the meantime. Attempts to enroll him in the native program failed. Since his counsel did not reapply for bail, the appellant remained in jail until his trial.

Notice of appeal from the ruling of the superior court was filed August 10, 1972. On October 3, 1972, Fabian appeared in superior court and was convicted upon his plea of guilty and was sentenced to a term of one year of confinement.

The appellants claim a substantive right to bail arising from the Alaska Bail Reform Act,[3] from Article I, sections 11 and 12 of the Alaska Constitution, and from the eighth amendment of the United States Constitution.

We cannot ignore, however, the preliminary procedural difficulties which these cases present. In each case before us, it is argued that the issues arising on appellant's application for bail have been mooted by either a subsequent dismissal, a conviction, or a revocation of probation. An application for review of an order of the trial court denying bail should be promptly filed. The Alaska procedures for review of a denial for bail are designed to ensure speedy consideration at the appellate level.[4] Although in this appeal the slower appellate process was utilized, we undertake to consider the substantive claims raised by appellants because they involve important recurring issues of law which may be capable of evading review.[5]

Appellants would have us interpret the eighth amendment of the federal constitution to create a right to bail.[6] The eighth amendment provides in pertinent part: "Excessive bails shall not be required . . . ." Appellants' argument raises two questions for consideration: 1) whether the fourteenth amendment due process clause [7] incorporates [8] the excessive bail provision of the eighth amendment; 2)

3. AS 12.30.010 et seq.

4. See App.R. 23, 24. The need for rapid rereview of bail orders is also reflected in the Alaska Bail Reform Act of 1966, AS 12.30.-030:
    "(a) A person who remains in custody after a review provided for in § 20(f) of this chapter may move the court having original jurisdiction over the offense to amend the order. The motion shall be determined promptly.
    (b) When a court denies a motion under (a) of this section or conditions of release have been imposed by the court having original jurisdiction over the offense, an appeal may be taken to the court having appellate jurisdiction over the court denying the motion or imposing the conditions subject to the rules of the Supreme Court of Alaska, and the District Court Rules of Criminal Procedure. The order of the lower court shall be affirmed unless it is found that the lower court abused its discretion.

If it is held that the lower court did abuse its discretion, the appellate court may modify, vacate, set aside, reverse, remand the action for further proceeding, or remand the action directing entry of the appropriate order, which may include ordering the person to be released under § 20(a) of this chapter. The appeal shall be determined promptly."

5. See Doe v. State, 487 P.2d 47 (Alaska 1971).

6. U.S.Const. amend. VIII.

7. U.S.Const. amend. XIV, § 1.

8. For literature on the application of the federal bill of rights to the states through the fourteenth amendment see Emerson, Haber & Dorsen, Political and Civil Rights In The United States 1379–80 (3d ed. 1967). See also Countryman, The Role of a Bill of Rights in a Modern State Constitution, Why a State Bill of Rights?, 45 Wash.L.Rev. 453, 454–474 (1970).

whether the excessive bail provision includes the unqualified right to bail.

As to the first question, the United States Supreme Court has not ruled on whether the eighth amendment bail provision applies to the states through the fourteenth amendment.[9] The most recent discussion on this subject by the Supreme Court occurred in Schilb v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502, reh. denied, 405 U.S. 948, 92 S.Ct. 930, 30 L.Ed.2d 818 (1971). In *Schilb* the issue before the Supreme Court related to the constitutionality of Illinois' bail statutes which permitted a defendant in some instances to post 10% of the bail directly to the court, of which the state retained 10% of the posted security as administrative "bail bond costs." Justice Blackmun, in the course of defining the issue before the court, stated:

> "Bail, of course, is basic to our system of law . . . and the Eighth Amendment's proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment. . . . But we are not at all concerned here with any fundamental right to bail or with any Eighth Amendment-Fourteenth Amendment question of bail excessiveness."

404 U.S. at 365, 92 S.Ct. at 484, 30 L.Ed.2d at 511 (citations omitted).

The question of incorporation by the fourteenth amendment would seem to await a more definitive answer in future adjudication.

There remains a substantial controversy over the eighth amendment's inclusion of an unqualified right to bail.[10] Much of the discussion on the issues appears prompted by the District of Columbia Court Reform and Criminal Procedure Act of 1970. The Act allows courts of the District to detain a defendant without bail for up to 60 days prior to trial if the court concludes that the defendant's release would constitute a danger to the community. D.C.Code Ann. §§ 23–1321 to 23–1332 (1973).

Perhaps the most widely cited case for supporting a right to bail under the eighth amendment is Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951).[11] *Stack,* however, is not convincing authority for supporting an unconditional eighth amendment right to bail. Although the opinion speaks to the right of release before trial, this discussion relates to federal statutes providing a right to bail following arrest for a noncapital offense.[12] Once this stat-

9. In Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the Supreme Court held that a California statute, which made addiction to the use of narcotics a criminal offense, inflicted a cruel and unusual punishment in violation of the eighth and fourteenth amendments. The court has yet to rule whether the provision against excessive bail is similarly incorporated by the due process clause of the fourteenth amendment.

10. For a discussion of this controversy see Foote, The Coming Constitutional Crisis in Bail (pts. 1–2), 113 U.Pa.L.Rev. 959, 1125 (1965); Meyer, Constitutionality of Pretrial Detention, 60 Geo.L.J. 1140 (1972); Mitchell, Bail Reform and the Constitutionality of Pretrial Detention, 55 Va.L.Rev. 1223 (1969); Tribe, An Ounce of Detention: Preventive Justice in the World of John Mitchell, 56 Va.L.Rev. 371 (1970).

11. In *Stack,* twelve petitioners were charged with violating the Smith Act, 18 U.S.C. §§

371, 385 (1970). Bail was first set for each defendant in varying amounts ranging from $2,500 to $100,000. Subsequently, bail was uniformly fixed at $50,000. In an effort to reduce bail, petitioners presented uncontroverted evidence concerning financial resources, family relationships, prior criminal records and other information. The government, on the other hand, presented evidence showing that four persons previously convicted under the Smith Act had forfeited bail. In vacating the lower court order denying petitioners' writs of habeas corpus, the Supreme Court held that the lower court had not followed proper criteria delineated in the Federal Rules of Criminal Procedure in fixing a reasonable bail.

12. It is clear from the opinion that this right to bail referred to the Federal Judiciary Act of 1789, 1 Stat. 73, 91 and Federal Rules of Criminal Procedure, Rule 46(a)(1), not the eighth amendment.

utory right to bail is recognized, then the eighth amendment excessive bail provision assures a reasonable bail.

In Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952) the Supreme Court in a case involving the deportation of certain aliens classified as dangerous held that in such circumstances, the eighth amendment did not require the petitioners to be released on bail.

> "The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept." 342 U.S. at 545, 72 S.Ct. at 536, 96 L.Ed. at 563 (footnotes omitted).

*Carlson,* however, is a special case involving the Internal Security Act of 1950, 8 U.S.C. § 137 (1970).

■ It is, however, not necessary in this appeal to decide whether appellants were entitled to bail under the eighth amendment to the United States Constitution.

Article I, § 11 of the Alaska Constitution provides:

> "In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve, except that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record. *The accused is entitled* to be informed of the nature and cause of the accusation; *to be released on bail, except for capital offenses when the proof is evident or the presumption great*; to be confronted with the witnesses against him; to have compulsory process for ob-

taining witnesses in his favor, and to have the assistance of counsel for his defense." (emphasis supplied)

Article I, section 11 was originally introduced as section 12 of Committee Proposal No. 7, offered by the Committee on the Preamble and Bill of Rights to the Alaska Constitutional Convention in December, 1955.[13] Section 12 of the committee proposal read in part:

> "The accused is also entitled to be informed of the nature and cause of the accusation; to be released on bail, except for capital offenses . . . ."

The commentary attached to the proposal indicated that section 12 was intended to give defendants "the opportunity to be released on bail except in capital offenses."[14] When the committee's proposal was discussed on the floor of the convention, Delegate Victor Fischer introduced an amendment to qualify the right to bail in cases involving capital offenses by adding the words "when the proof is evident or the presumption great."[15] The delegate's comments on this amendment clearly indicate the guarantee of a right to bail:

> "The language in the Federal Constitution reads generally to the effect that excessive bail shall not be required. A number of states have changed that language to provide more or less the language we have, that the accused may be released on bail except for capital offenses. But in practically every case where this new language is used, the words, 'when proof is evident and the presumption great' and that is a necessary protection for the accused and we shall follow the majority of the states in this case. It has proven a desirable practice. The actual determination of when a person is released on bail, if charged with a capital offense, is still up to the judge."[16]

---

13. 6 Alaska Constitutional Convention, Minutes, Appendix V, at 65 (1963) (hereinafter cited as Minutes].

14. Minutes, *supra,* Appendix V, at 72.

■

15. 2 Minutes, *supra,* at 1344.

16. 2 Minutes, *supra,* at 1344–345. See American Law Institute, Code of Criminal Procedure 338–41 (1930) which indicates that

Our study of Article I, section 11 thus compels a conclusion that the Alaska Constitution without doubt guarantees to every accused person the *right* to be released on bail except for capital offenses [17] where the proof is evident or the presumption great.[18] Some jurisdictions with similar bail provisions [19] have created an implied limitation on this constitutional right. But in Alaska such an implied limitation would necessarily contravene both the plain language of this constitutional provision and its intended purpose as stated at the constitutional convention.

In Reeves v. State, 411 P.2d 212 (Alaska 1966), we held that indigent defendants did not have an absolute right to be released on personal recognizance prior to trial. In *Reeves,* the defendant was charged in a four count indictment of serious offenses, including first degree murder, burglary and robbery. The trial court first set bail at $50,000, which was later reduced to $10,000. On appeal, the issue was limited to a claim that all indigent defendants were entitled to pretrial release as a matter of right. We rejected this contention as unsound and approved the rationale of Pilkinton v. Circuit Court, 324 F.2d 45 (8th Cir. 1963).[20] *Reeves,* however, as

was pointed out in Doe v. State, 487 P.2d 47 (Alaska 1971), should not be taken as denying the right to bail provided under Article I, section 11.

Doe v. State was a delinquency proceeding involving a child. His attorney requested a continuance on a hearing. The court continued the case briefly but ordered the child detained during the interim. In considering the child's right to remain free pending an adjudication, this court discussed the right to bail as it is expressly provided in the Alaska Constitution:

> "Under the Alaska Constitution, all persons accused of a criminal offense are entitled to be released on bail except for capital offenses where the proof is evident or the presumption great." 487 P. 2d at 51 (footnote omitted).

Apart from Article I, section 11, one additional provision of the Alaska Constitution has to do with bail. Article I, section 12 of the Alaska Constitution provides in part:

> "Excessive bail shall not be required, not excessive fines imposed, nor cruel and unusual punishments inflicted."

This section was originally section 9 of Committee Proposal No. 7 introduced by the Committee on the Preamble and Bill of

40 states had similar constitutional provisions providing for the right to bail except in capital offenses. *See also* Application of Corbo, 54 N.J.Super. 575, 149 A.2d 828, 833 (1959).

17. Sections 66–16–43 and 66–16–44, ACLA 1949, which provided for the death penalty were repealed by the territorial legislature in 1957. Ch. 132, SLA 1957. Repeal, of course, does not preclude the legislature from ever establishing capital offenses, but since there are no capital offenses in Alaska at this time, every criminal offense carries the right to bail.

18. "The early common law did not permit bail in felony cases; later on bail was permitted before trial, but not during trial. When bail was permitted, it was a matter of discretion with the court, not a matter of right. . . .

Most states have limited the judicial discretion of the common law by guaranteeing, by constitutional or statutory provi-

sion, that all persons shall be bailable by sufficient sureties except in certain cases." 8 Am.Jur.2d Bail and Recognizance §§ 22, 23, at 796–797 (1963) (footnotes omitted).

19. *See, e. g.,* State v. Johnson, 61 N.J. 351, 294 A.2d 245, 250 (1972). New Jersey has a similar constitutional bail provision to that of Alaska. There the court said in part:
"Expressed in pragmatic terms this right to bail means that the accused has the right to pretrial liberty on such bond in such amount as in the judgment of the trial court under the circumstances of the case will insure his appearance at the trial. If, however, the court is satisfied from the evidence presented on the application for bail that regardless of the amount of bail fixed, the accused if released will probably flee to avoid trial, bail may be denied."

20. *Pilkinton* provided that a state may require bail in some amount and that the eighth amendment excessive bail provision does not provide a right of pretrial release if the defendant is unable to post bail.

Rights to the Alaska Constitutional Convention in December, 1955.[21]

It is not necessary to determine whether or not Article I, section 12 of the Alaska Constitution guarantees a right to bail and, indeed, such an interpretation would be superfluous in view of the right to bail provision found in Article I, section 11. It is enough to say that the excessive bail provision insures the fixing of a reasonable bail and is to be considered in conjunction with the right to bail provision of Article I, section 11.

We note that California's constitutional provisions for bail are substantially identical with those of Alaska. The Supreme Court of California, applying that state's constitutional provisions, recently rejected the so-called "public safety" exception for bail:

> "Our constitutional language expressly providing that all persons shall be bailable except for a capital offense was consciously *added* to the 'no excessive bail' language adopted from the Eighth Amendment in order to make clear that, unlike the federal rule, all except the one class of defendants were to be bailable. As pertinent statutory provisions may not be read to impose greater limits on the right to bail as guaranteed by the California Constitution, there is no validity in the argument that there is an implied 'public safety' exception in statutory or other provisions guaranteeing the right to bail and we hold that such an exception does not exist in view of the clear direction of article I, section 6. 'If the constitutional guaranties are wrong, let the people change them—not judges or legislators.'"

In re Underwood, 9 Cal.3d 345, 508 P.2d 721 (1973).[22]

In addition to the constitutional guarantee of bail, a right to bail is found in the Alaska statutes. AS 12.30.010 provides that

> The defendant in a criminal proceeding is entitled to be admitted to bail before conviction as a matter of right.

This section was part of the original Alaska Bail Reform Act[23] and has remained unchanged. In 1966 AS 12.30.020(a) and (b), read as follows:

> "(a) A person charged with an offense shall, at his first appearance before a judicial officer, be ordered released pending trial on his personal recognizance or upon the execution of an *unsecured appearance bond* in an amount specified by the judicial officer *unless* the officer determines that the release of the person will not reasonably assure the appearance of the person as required.
>
> (b) If a judicial officer determined under (a) of this section that the release of a person will not reasonably assure the appearance of the person, the judicial officer may
>
> (1) place the person in the custody of a designated person or organization agreeing to supervise him;

21. The commentary to the proposal indicated that section 9 was identical with the excessive bail provision of the eighth amendment to the United States Constitution. 6 Minutes, *supra*, Appendix V, at 72.

22. In his dissent Justice Burke suggests that since the Constitution of California recognizes the inalienable right of all men "to enjoy and defend their life and liberty, and to protect their property, and to pursue and obtain safety and happiness", the courts should exercise an inherent power to achieve a suitable balance between society's rights and the defendant's right to bail. This suggestion rests wholly on the questionable assumption that man's inalienable rights are incompatible with the constitutional right of an accused to bail.

An additional argument for the "public safety" exception advocated by the dissent is that courts may accomplish the same result when the judge fixes an amount of bail which the particular defendant is unable to furnish. According to Justice Burke, this merely evades the issue and does indirectly what may not be done directly, and moreover violates the prohibition against excessive bail. Such an argument furnishes little support for the central thesis in Justice Burke's contentions. To the extent it suggests that difficulty in application of a constitutional principle provides justification for its rejection, the argument itself evades the issue.

23. SLA 1966, Ch. 20, § 1.

(2) place restrictions on the travel, association, or place of abode of the person during the period of release;

(3) require the person to return to custody after daylight hours on designated conditions;

(4) require the execution of an appearance bond in a specified amount and the deposit in the registry of the court, in cash or other security, a sum not to exceed 10 per cent of the amount of the bond; the deposit to be returned upon the performance of the condition of release;

(5) require the execution of a bail bond with sufficient solvent sureties or the deposit of cash; or

(6) impose any other condition considered reasonably necessary to assure the defendant's appearance as required." (emphasis added)

Since both sections, AS 12.30.010 and AS 12.30.020, were part of the Alaska Bail Reform Act, section 12.30.020 must be taken to recognize and to implement the right to bail afforded by AS 12.30.010.

Subsection (a) of AS 12.30.020 requires a defendant to be released on his personal recognizance or upon the execution of an unsecured appearance bond "unless the officer determines that the release of the person will not reasonably assure the appearance of the person as required." The "unless" clause relates only to denial of personal recognizance or an unsecured appearance bond and not to the right of bail. Subsection (b) provides that in the event the judicial officer should determine that a personal recognizance release or an unsecured appearance bond would not reasonably assure the appearance of a defendant, the judicial officer could impose other requirements to assure the presence of the defendant. Section (b)(6) authorizes a judicial officer to impose any other reasonable conditions to assure the defendant's appearance. But this may not be interpreted so as to empower a judicial officer to absolutely deny the right to bail. Such a construction would not only be inconsistent

with the basic purpose of the Bail Reform Act but would be unconstitutional under Article I, section 11 of the Alaska Constitution.

In 1967 the Alaska legislature amended AS 12.30.020 by Ch. 112, SLA 1967. The "unless" clause of subsection (a) was amended to read "unless the officer determines that the release of the person will not reasonably assure the appearance of the person as required, or will pose a danger to other persons and the community." Subsection (b)(6) was amended as follows:

"If a judicial officer determines under (a) of this section that the release of a person will not reasonably assure the appearance of the person, or will pose a danger to other persons and the community, the judicial officer may . . .

(6) Impose any other condition considered reasonably necessary to assure the defendant's appearance as required and the safety of other persons and the community."

▰▰ The State urges that these amendments permit the detention of defendants without bail when the judicial officer determines that the defendant "will pose a danger to other persons and the community." To support this argument the State refers to the Judiciary Committee Report on House Bill No. 166:

"This bill provides that a judge in determining the amount of bail to be posted for release of an individual accused but not yet tried may consider the amount necessary to guarantee his appearance for trial and also the safety of other persons and the community. The concept of the safety of other persons and the community is a new matter. This reason may be used to set higher bail or even to refuse bail." 1967 Alaska H.R. Jour. 339.

The committee's intent seemingly was to permit a judicial officer to consider "danger to the community" as a factor in setting bail. The legislature could not, of

course, infringe upon the constitutional right of bail.

■ Thus the amendment to subsection (a) of AS 12.30.020 operates to add another factor to be considered in determining whether an accused person is entitled to be released on personal recognizance or on an unsecured appearance bond. This amendment does not amount to a repeal of the right to bail found in AS 12.30.010. In like manner, the amendment to paragraph (b)(6) of AS 12.30.020 added another factor to consider in determining whether additional conditions should be imposed on a defendant. Neither provision may be read as empowering a judicial officer to deny bail. In reaching this construction, we consider it significant that the legislature did not undertake to amend AS 12.30.010 which we have noted remains as in the original Alaska Bail Reform Act and expressly provides for right to bail. Although the trial court may not deny bail to an accused, the trial judge can consider danger to the community as a factor in assessing the amount of bail or fixing the terms of a conditional release.[24] We hold therefore that the 1967 amendments, Ch. 112, SLA 1967, to the Bail Reform Act do not permit the detention of persons without bail. Moreover, a legislative enactment expressly permitting the detention of persons without right to bail would be uncon-

stitutional unless a constitutional amendment were adopted.[25]

■ It follows that the trial court erred in refusing to grant the right to bail to appellant Richard Snyder afforded by Article I, section 11 of the Alaska Constitution and by the Alaska Bail Reform Act.

It is true unfortunately that crimes including those involving assaults, robbery and the theft of property are all too commonplace. Public safety has become a matter of the most serious concern to all law-abiding citizens. But alternatives other than preventive detention of an accused must be examined in the efforts to achieve reasonable and adequate public safety.[26]

In the case of appellant Aloyisus Fabian, the trial judge offered to release the defendant to the custody of the Anchorage Native Program for Alcoholic and Drug Abuse. However, efforts to enroll Fabian in the program failed. He remained in jail because his counsel, for reasons unexplained, failed to reapply for bail. In this instance the trial judge afforded an opportunity for defendant to be released. Under these circumstances, the trial court did not deny Fabian his right to bail.

■ The case of Max Ray Martin presents different considerations. Article I, section 11, as we have said, guarantees the accused in a criminal prosecution the

---

24. Other factors to take under consideration are enumerated in AS 12.30.020(c).
"In determining the conditions of release under (b) of this section the judicial officer shall take into account
(1) the nature and circumstances of the offense charged,
(2) the weight of the evidence against the person,
(3) the person's family ties,
(4) the person's employment,
(5) the person's financial resources,
(6) the person's character and mental condition,
(7) the length of the person's residence in the community,
(8) the person's record of convictions,
(9) the person's record of appearance at court proceedings,
(10) the flight of the accused to avoid prosecution or his failure to appear at court proceedings.

25. Note, Preventive Detention, 79 Harv.L. Rev. 1489, 1500 (1966). "In those states [which guarantee the right to bail in noncapital cases], denial of bail in a noncapital case for preventive purposes, no matter how great the dangers posed by release, would be permissible only by constitutional amendment." (footnote omitted)

26. Criminal Rule 45 requires a trial within four months from the "date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first." This rule is intended to make effective the right of the accused to a speedy trial as well as bringing about a prompt disposition permitting incarceration of a dangerous offender hopefully for rehabilitation. In recognition of this policy, trial courts should grant continuances of criminal trial sparingly and only when necessary.

right to bail. However, a probation revocation hearing is not a criminal prosecution looking toward an adjudication of guilt or innocence.[27] Although this court in Hoffman v. State, 404 P.2d 644 (Alaska 1965), required the appointment of counsel to indigent probationers in a revocation hearing, that decision rested on a statutory interpretation of AS 12.55.110 [28] consistent with the equal protection clauses of both the Federal and Alaska Constitutions. *Hoffman* does not hold that probation revocation hearings are to be equated to a criminal prosecution.[29]

We do not interpret Article I, section 11 of the Alaska Constitution to extend the right of bail to probation revocation proceedings. While the Alaska Constitution and statutes insure to the accused in all criminal prosecutions a right to bail, Martin was not the accused in a criminal prosecution at the time he requested bail from the trial court.[30]

Nor do we find that appellant was entitled to bail under the Alaska Bail Act. His reliance on AS 12.30.010 is misplaced, because the right to bail under this statute is guaranteed prior to conviction. When a defendant reaches the status of a probationer, he can no longer claim the right to bail protected by AS 12.30.010. Nor can he claim bail under the probation statutes,[31] since they fail to mention bail, and AS 12.30.040, which provides for release after trial is limited in application to convicted persons awaiting sentence or whose appeal is pending.

While we hold that appellant Max Ray Martin was neither entitled to bail under the Alaska Constitution nor the Alaska Bail Act, we suggest bail should be withheld pending revocation proceedings only in unusual cases. Trial judges have wide latitude in imposing suitable conditions for prehearing release, other than the denial of bail. The denial of bail may constitute a needless disruption of the probation process negating the program's objectives of rehabilitation and eventual integration into society. Furthermore, the recent expansion in the area of probationer's rights by the United States Supreme Court in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) suggests the granting of bail. In *Gagnon,* the Court, *inter alia,* required as a matter of due process that a probationer be afforded a prompt preliminary hearing to determine whether probable cause exists to believe a violation of probation has occurred. Following this preliminary hearing, a final hearing must be allowed prior to an ultimate determination concerning the revocation of probation.

The *Gagnon* due process requirements were adopted by this court in Trumbly v. State, Opinion No. 957, 515 P.2d 707 (1973). Both *Trumbly* and *Gagnon* evinced a concern for considering the rehabilitative treatment afforded by probation as a factor in determining whether probationary status should be revoked. As this court stated in *Trumbly,*

"The requirement that probation revocation follow after a showing of 'good cause' requires the trial judge to find that continuation of probationary status would be at odds with the need to pro-

27. Trumbly v. State, Opinion No. 957, 515 P. 2d 707 (1973). Gagnon v. Scarpelli, 411 U.S. 778, 414, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656, 651–662 (1973) (Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." (footnote omitted)). *Cf.,* Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972).

28. AS 12.55.110 governs revocation of probation proceedings.

29. Efforts to broadly interpret *Hoffman* as eliminating the technical classifications between administrative and criminal proceedings for purposes of the double jeopardy clause, were rejected by this court in Alex v. State, 484 P.2d 677 (Alaska 1971). We rejected this argument by noting that Hoffman only involved an equal protection analysis, not the expansion of any substantive rights as claimed by the defendant.

30. *Cf.* In re Law, 10 Cal.3d 21, 109 Cal.Rptr. 573, 513 P.2d 621 (1973) (where the California Supreme Court denied a parolee's right to bail pending a hearing investigating alleged violations of parole).

31. AS 12.55.080 and AS 12.55.110.

tect society and society's interest in the probationer's rehabilitation. Revocation should follow violation of a condition of probation when that violation indicates that the corrective aims of probation cannot be achieved." Trumbly v. State, Opinion No. 957, 515 P.2d 707 (1973) (footnotes omitted).

In Martin's case, there has been no showing that there was abuse of the trial judge's discretion in refusing to allow Martin's release on bail pending a revocation hearing.[32]

We conclude that appellant Richard Snyder was entitled to bail. The appeals of Aloyisus Stephan Fabian and Max Ray Martin are dismissed.

32. We note that federal probationers are by court rule provided with an opportunity for release pending a hearing. Federal Rule of Criminal Procedure 32(f).