246 So.2d 158 (1971)
STATE of Florida ex rel. Jackson Henry SMITH, Petitioner,
v.
Royal UNTREINER, Sheriff, Escambia County, Florida, Respondent.
No. 0-418.
District Court of Appeal of Florida, First District.
March 25, 1971.
Rehearing Denied April 22, 1971.
*159 Pozen, Pestcoe, Gold & Gold, Miami, for petitioner.
Robert L. Shevin, Atty. Gen., Joseph W. DeMember, Asst. Atty. Gen., for respondent.
SPECTOR, Judge.
Petitioner seeks to review by habeas corpus an order setting bail pending trial on criminal charges on the ground that the amount thereof is so excessive as to amount to a denial of bail in contravention of applicable constitutional and statutory provisions.
Petitioner stands charged with the commission of three felonies, viz: conspiracy to commit a felony, to wit, burglary; possession of burglary tools; and possession of marijuana. The burglary which was the object of petitioner's alleged conspiracy was of the Bank of the South in Pensacola, and the tools allegedly possessed included two-way radio equipment, batteries, wires, knives, telephone equipment, rope, duffle bags and briefcases containing a crow bar, sledge hammer, several pairs of gloves, tools, hose, three .38 caliber revolvers, fourteen burn bars, .30 caliber carbine, M-1 with loaded banana clip, a steel puller, flashlight, ammunition, one .357 Colt pistol with obliterated serial numbers, a ski mask, handcuffs, bullets, tanks, gauges and tools adapted for cutting through and breaking open a building, vault or steel safe.
Upon the filing of the informations, the court established bail in the amount of $100,000 on the conspiracy charge, $25,000 on the possession of burglary tools and $25,000 on the marijuana case. Petitioner sought reduction of bail by motion in the trial court and evidence was presented at a hearing which ultimately resulted in a reduction of bail by the trial court to $100,000 for all three charges. Although the order reducing bail did not assign a specific amount for each of the charges, we can reasonably assume that the aggregate amount was intended to be allocated among the charges in the same proportion as was the case with the initial amount of $150,000. We therefore consider the trial court's order of reduction to result in bail on the conspiracy charge at $65,000, possession of burglary tools at $17,500 and the marijuana case at $17,500.
Since the amount of bail set is generally a matter for the sound discretion of the trial court, one who seeks to show that such discretion was abused must adduce evidence sufficient to overcome the presumption of correctness of the trial court's order. Lambert v. State, 151 So.2d 675 (Fla.App. 1963); Baker v. State, 213 So.2d 285 (Fla.App. 1968). While Lambert and Baker, supra, involved bail pending appeal after conviction, the principle of sound discretion is equally applicable in cases concerning bail prior to trial, for only by weighing the soundness of the trial court's discretion can we determine whether the amount of bail is reasonable and not excessive.
In his contention that the bail set in the case at bar is excessive and therefore violative of Article I, Section 14, Florida Constitution of 1968, F.S.A., petitioner relies heavily on the decisions of this court in State ex rel. Crabb v. Carson, 189 So.2d 376 (1966), and Logue v. Hinote, 228 So.2d 414 (1969). In Crabb, we recognized that the purpose of bail is not to punish the accused but to secure his attendance to answer the charge against him. There the trial court set bail at $30,000, and this court found that amount to be excessive and reduced it to $5,000 on each of two informations for a total of $10,000. In Logue, supra, we found that $25,000 bail on charges of possession of stolen property was excessive and reduced it to $10,000.
*160 Another case relied on by petitioner is Matera v. Buchanan, 192 So.2d 18 (Fla. App. 1966), in which the court reversed an order of the circuit court denying reduction of $250,000 bail and remanded the case for the setting of bail in an amount not so excessive as to amount to a denial of bail. In Matera, the court said, at page 20:
"Under our system of constitutional government, the right to bail prior to trial of one accused of a non-capital crime is absolute. [citations omitted] That right is one of the bulwarks in the structure of a free society. * * * Bail should not be fixed in so excessive an amount as to preclude the probability of the accused's being able to furnish it."
In Matera, the court also noted that each case must be examined on its own facts to determine the reasonableness of the amount of bail set.
In opposing petitioner's prayer for reduction in bail, the State cites the following statement from Florida Jurisprudence as controlling:
"* * * the ability of the accused to give bail, the nature of the offense and the penalty for it, the accused's character and reputation, health, and general financial status, the character and strength of the evidence or probability of guilt, the probability of the accused appearing at trial, the prior record of the accused in responding to process, whether the accused was a fugitive from justice when arrested, and whether the accused is under bond for appearance at trial in other cases." 4 Fla.Jur., Bail, § 35.
Examination of the authorities cited by both sides of this controversy leaves no doubt that both agree on the controlling principles of law. However, there is disagreement as to the application of these principles to the facts at hand.
Petitioner is a resident of Atlanta, Georgia. He has a record of numerous criminal charges in that state. A former attorney of his testified that in December of 1966 he was charged with possession of an automobile with an altered serial number, possession of marijuana and two counts of burglary. Bail was set on these charges at $2,500 per charge for a total of $10,000. In the summer of 1967 while he was out on bail awaiting the trial on the above charges, he was charged with two counts of automobile larceny and bail was set at $5,000 on each charge for a total of $10,000. All six of these felony charges resulted in total bail bonds of $20,000. Again, some six months later, petitioner was charged with armed robbery and was again released on bail of $5,000. By then the aggregate bail for all seven of petitioner's felony charges in Georgia amounted to $25,000. Finally in April, 1968, petitioner was tried and convicted of armed robbery and sentenced to serve ten years in Georgia State Prison. His conviction was affirmed by the Georgia Supreme Court, 224 Ga. 750, 164 S.E.2d 784. Apparently, the other six felony charges were dismissed by the prosecutor upon obtaining the conviction on the robbery charges. This practice appears to be common in many jurisdictions, including Florida, in the supposed interest of prosecutorial and judicial economy in instances where a person who is charged with a series of crimes is brought to trial and is convicted on any one of the charges. Such well intentioned effort to achieve economy perhaps explains the reason why no self-respecting criminal is content with the commission of only one robbery, burglary or rape since the odds are that the overburdened prosecutor will drop some of the charges when there is a conviction as to one of them. This is particularly true when some of the offenses charged were committed in some other state and the prosecuting authorities are only too glad to defer action knowing that the offender is serving time in some other jurisdiction. Of course, the prosecutor need not wait to bring the charges to trial if the holding state will produce its prisoner for trial [see Dickey v. Circuit Court of *161 Gadsden County, 200 So.2d 521 (Fla. 1967)], but the pressure to address oneself to a more immediate offense coupled with the economic aspect mentioned above tends to result in only a fraction of the offenses charged being brought to trial.
After serving some two years of his term, petitioner was ordered released by the United States District Court in Atlanta on a writ of habeas corpus. That decision is pending in the United States Court of Appeals, Fifth Circuit, and petitioner is out on $5,000 bail pending the outcome of that proceeding and possible eventual retrial by Georgia authorities on the robbery charges.
At the time petitioner was arrested and charged by the Florida authorities, it appears he was out on bail in Georgia in the robbery case last mentioned. It is argued by petitioner that his previous record of responding to notices to appear in court in connection with the Georgia charges entitles him to bail in an amount more nearly that set for him in the aggregate of $25,000 on the Georgia charges. This argumentation is based on the proposition found articulated repeatedly in the Florida decisions concerning excessive bail to the effect that the purpose of bail prior to trial is to insure that the defendant will appear at the appointed time to stand trial. We agree in principle with petitioner's argument. But that is not the question before us. The question is whether the trial judge abused his discretion in determining that $100,000 was an appropriate amount to insure the petitioner's presence for trial on the three felony charges lodged against him in Florida. With reference to the constitutional proscription of Article I, Section 14, Florida Constitution of 1968, the question might be stated to be whether bail in an amount determined by the trial court as necessary to insure a defendant's appearance for trial is unreasonable or excessive. Obviously, the question turns on whether the amount involved falls within a range that can be found necessary in light of the circumstances of the particular case.
At the hearing on petitioner's motion for bail in the trial court, evidence was presented of a conversation between the officers bringing petitioner and one of his codefendants to the courtroom from the jail for the hearing to the effect that petitioner and his accomplices made boasts concerning the sizeable amounts of money they had and their willingness to see that the officers "got fat" if the officers took them to the airport instead of the courthouse. This evidence was susceptible of being interpreted by the court to mean that petitioner was willing to bribe an officer if he helped him to escape and thus was tantamount to proof that petitioner could not be safely expected to present himself for trial when enlarged on bail unless the amount thereof was substantial. The record of the proceedings below shows that there has been an information filed against petitioner charging him with attempting to bribe the officer who transferred him from the jail to the courthouse, although we are not here concerned with bail on that charge.
Secondly, the statement made concerning petitioner's ownership or access to a lot of money might well have been interpreted by the trial court to mean that petitioner was able to post a high bail and that the prospective forfeiture of a lesser amount in the event petitioner did not show for his trial would not be a sufficient deterrent to becoming a fugitive from justice. That the petitioner has heretofore appeared in the Georgia courts when his presence was required on the charges there pending is a factor to be given much weight as contended by petitioner. However, it is by no means decisive. When petitioner did appear in the Georgia courts, he had not yet been convicted of robbery.
It is clear from the record that the trial court considered the petitioner to be a high risk on the question of appearance for trial since the court made reference to several persons who had recently jumped bail in his jurisdiction when the odds of conviction *162 had increased to the point where the likelihood of incarceration loomed large as the number of charges against them increased. Those bail jumpers too had established a reputation for appearing in court when required to do so and had therefore established the reputation of reliability while out on bail awaiting trial.
When a person is charged with a single crime, his chances of escaping conviction and incarceration are greater than if he is charged with two separate crimes. The more numerous the charges, the lesser the likelihood of escaping conviction and incarceration. As the number of charges increase, so do the chances that a conviction will result. The chances of conviction increase geometrically, not arithmetically. While there is no decision in this jurisdiction recognizing this reality which the trial court learned by experience, our research has found such a decision in a sister state. In Ex Parte Ruef, 7 Cal. App. 750, 96 P. 24 (1908), the defendant was charged in 116 indictments charging bribery. Bail was set in each case at $10,000. Rejecting the contention that the aggregate amount was excessive, the court said:
"* * * [T]he greater the number of indictments the greater the probability of conviction. The greater the probability of conviction, the greater the inducement to a defendant to become a fugitive from justice. * * *"
See also Ex Parte Houghton, 1 Okla. Cr. 302, 97 P. 1021 (1908).
Apparently, it was on the basis of the totality of the trial court's experience in dealing with persons facing multiple criminal charges in separate jurisdictions that he determined that substantially high bail was required to assure the petitioner's presence for trial. When we consider the circumstance of this case before the trial court regarding the factors which may properly be taken into consideration as found in the excerpt taken from Florida Jurisprudence quoted hereinbefore, it cannot be said that petitioner has demonstrated that the trial court abused its discretion in setting bail in the amount in question. In absence of such a showing, it cannot be said that bail as set is excessive.
Petition is denied.
WIGGINTON, Acting C.J., and CARROLL, DONALD K., J., concur.