410 So.2d 619 (1982)
Richard B. HARP, Petitioner,
v.
The Honorable Harry G. HINCKLEY, As Circuit Judge of the Seventeenth Judicial Circuit, and Captain Joseph Mullen, As Superintendent of the Pompano Juvenile Detention Facility, Respondents.
No. 81-2066.
District Court of Appeal of Florida, Fourth District.
March 3, 1982.
*620 Vincent R. Alto, Fort Lauderdale, for petitioner.
Jim Smith, Atty. Gen., Tallahassee, and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for respondents.
ANSTEAD, Judge.
This is a petition for review of an order conditioning the petitioner's pretrial release upon the posting of a $10,000 surety bond. At issue is whether the trial court may increase the amount of a bail bond required to be posted by a defendant for release before trial, for the purpose of restraining the defendant from committing future acts of misconduct. Immediately before the scheduled release of this opinion this appeal was rendered moot by virtue of the disposition of the petitioner's case in the trial *621 court.[1] Nonetheless, we have elected to treat the issue because we find it to be a recurring issue of great importance to the public and the courts that has to date evaded resolution in an appellate opinion. See Walker v. Pendarvis, 132 So.2d 186 (Fla. 1961).
Petitioner Richard B. Harp, a 16 year old juvenile, was arrested on October 6, 1981 and charged in the juvenile division of the circuit court with attempted armed robbery. After a hearing on October 19, 1981, the presiding juvenile judge ordered:
Court finds that child has no prior findings of guilt and has never missed a court appearance. The Court finds that the child does have extensive arrests, all of which have been finally disposed without findings of guilt. The Court further finds that the child is not a risk as to appearance but does present a danger to the community if released without bond. Bond is set at $2,500 on attempted armed robbery.
On October 20, 1981, petitioner's mother, the mother of five other children and employed as a maid, paid the bond premium of $250 for the $2,500 bail bond to a bonding company, the bond was filed, and petitioner was released.
On October 26, 1981 the State of Florida filed an information in the criminal division of the circuit court based on the same alleged criminal episode, this time charging petitioner with attempted murder and possession of a firearm while engaged in a criminal offense. Both offenses are felonies of the second degree carrying a maximum penalty of fifteen years in prison and a $10,000 fine for each offense. At his first appearance in the criminal division, petitioner's bond was set at $7,500.
At arraignment on November 5, 1981, petitioner was adjudged indigent and a special public defender was appointed to represent him. At this hearing the petitioner asserted that he resided permanently with his mother, and that upon his release on bail he had commenced employment with a lawn service, contacted his attorney daily, and helped in the preparation of his defense by personally contacting exculpatory witnesses. Petitioner's counsel requested the trial court to reduce the amount of his bail bond to $2,500, the amount set by the juvenile court for the same criminal episode. The trial court rejected this request and, instead, increased the bond requirement to $10,000. At the hearing, the trial court did not dispute the findings of the juvenile judge that the petitioner did not constitute a risk as to appearance. On the contrary, the trial judge expressly stated that he was not concerned about petitioner appearing in court. Rather the trial judge candidly stated that he was setting bond at $10,000 in order to protect the community from the risk that the petitioner would engage in additional criminal activity if released.[2] The petitioner was unable to post the higher bond and was incarcerated in the Pompano Juvenile Detention Center to await trial.
At first blush this case appears to present the fairly straightforward question of whether the trial court abused its discretion in determining that a bail bond of $10,000 was necessary to secure the petitioner's subsequent appearance in court. And, in view of the charges filed against the petitioner and the broad discretion vested in the trial court to determine what security is necessary to secure petitioner's presence, we might ordinarily have approved the bond here despite petitioner's indigency and inability to post such a bond. However, the trial judge candidly and repeatedly stated on the record that the decision to increase the amount of the bail bond was not predicated *622 on any concern as to petitioner's subsequent appearance in court, but rather was predicated on a concern that petitioner constituted a risk to the community at large because of a pattern of repetitive criminal conduct.
In the face of the trial court's express statements we would be remiss if we did not address the issue of whether a trial court may use bail to detain the petitioner for the purpose of preventing him from committing further criminal acts in the community, a question not expressly discussed in any Florida decision cited by the parties or revealed by our own research. We conclude that in Florida bail may not be used for purposes of preventive detention before trial and that, even if it could be, the record in this case would not support a finding that such detention was necessary.
The United States Supreme Court has held that the function of bail is ordinarily limited to securing the defendant's presence in court:
From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), 18 U.S.C.A., federal law has unequivocally provided that a person arrested for a noncapital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. See Hudson v. Parker, 1895, 156 U.S. 277, 285, 15 S.Ct. 450, 453, 39 L.Ed. 424. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.
The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. Ex parte Milburn, 1835, 9 Pet. 704, 710, 9 L.Ed. 280. Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is "excessive" under the Eighth Amendment. See United States v. Motlow, 10 F.2d 657 (1926), opinion by Mr. Justice Butler as Circuit Justice of the Seventh circuit).
Since the function of bail is limited, the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant.
Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3, 6 (1951). These same principles of federal law are embodied in the provisions of Article I, Section 14 of the Florida Constitution (1968) and Rule 3.130(b)(4)(i) of the Florida Rules of Criminal Procedure.
Article I, Section 14 grants and guarantees the right of pretrial release on reasonable bail to all accused persons other than those charged with a capital offense or an offense punishable by life imprisonment. State v. Arthur, 390 So.2d 717 (Fla. 1980).[3] The pretrial release of such persons is further governed by the provisions of Florida Rule of Criminal Procedure 3.130. Rule 3.130(b)(4)(i) expressly provides that the "purpose of bail is to insure the defendant's appearance." Rule 3.130(b)(4)(iii) sets out the factors to be considered by the trial court in setting the terms of pretrial release:
In determining which form of release will reasonably assure appearance, the judge shall, on the basis of available information, *623 take into account the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the defendant's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.
Rule 3.130(b)(4)(i) does not authorize bail to be utilized as a means of preventive detention. Nor does Rule 3.130(b)(4)(iii) authorize a consideration of the likelihood of the accused committing subsequent crimes upon release as a factor to be considered in setting the amount of a bail bond. Rather, Rule 3.130(b)(4)(i) expressly provides that the exclusive purpose of bail is to insure the defendant's appearance in court to answer the charges against him.
The vast majority of cases dealing with this issue in other states having constitutional provisions on bail similar to those contained in Article I, Section 14, hold that the utilization of bail for purposes of preventive detention is improper. State v. Johnson, 61 N.J. 351, 294 A.2d 245 (1972); Commonwealth v. Truesdale, 449 Pa. 325, 296 A.2d 829 (1972); In re Underwood, 9 Cal.3d 345, 107 Cal. Rptr. 401, 508 P.2d 721 (1973); Martin v. State, 517 P.2d 1389, 75 A.L.R.3d 941 (Alaska 1974); State v. Pray, 133 Vt. 537, 346 A.2d 227 (1975); and Petition of Humphrey, 601 P.2d 103 (Okla.Cr. 1979); Sprinkle v. State, 368 So.2d 554 (Ala. Cr.App. 1978), cert. quashed, 368 So.2d 565 (Ala. 1979). Anno: Pretrial Preventive Detention, 75 A.L.R.3d 956. The rationale of these holdings and the underlying conflict giving rise to this issue has been pinpointed by the Supreme Court of Vermont:
This case is illustrative of the conflict between the constitutional entitlement to bail and the public's concern that persons with apparently dangerous propensities should be allowed to be unconfined. But the constitutional provision for bail is a necessary corollary to our concept that persons may be imprisoned only after proper conviction of crime.
State v. Mecier, 388 A.2d 435 at 437 (Vt. 1978). In other words punishment by incarceration is prohibited, as to both the charge presently pending and those that might possibly be committed by the defendant in the future, until after the accused has been tried and convicted. In our view the reasoning of these cases is compelling and we conclude that under the express provisions of Article I, Section 14 and Rule 3.130(b)(4)(i) bail may not be used for the purposes of pretrial preventive detention.
We also recognize that the state has a legitimate interest in protecting the community from those who repeatedly engage in criminal misconduct, including those who engage in such conduct while on pretrial release from pending charges. However, because the purpose of bail is limited and the right to pretrial release guaranteed by our constitution, courts are not free to fashion their own remedies for this problem out of the provisions relating to bail.[4],[5] The problem has been addressed in a variety of ways. Some cases have recognized the authority of the legislature *624 to enact pretrial detention laws narrowly drawn to deal with those who have evinced a flagrant disregard for the law and the legal process. Blunt v. United States, 322 A.2d 579 (D.C.Ct. of Appeals 1974). Other cases have recognized a narrow exception to the ban on pretrial preventive detention in cases of national security or imminent threat of danger to a witness in the pending case. Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); United States v. Gilbert, 425 F.2d 490 (D.C. Cir.1969); Anno: Pretrial Preventive Detention, 75 A.L.R.3d 956. However, for the most part, repeat offenders are dealt with by habitual offender statutes such as Section 775.084, Florida Statutes (1981), which impose substantially greater penalties on chronic offenders. Other laws permitting detention of persons found to constitute an imminent danger to themselves or others or permitting detention of juveniles found to be chronic delinquents also serve a preventive purpose. See Chapters 394 and 39, Florida Statutes (1981). Our holding today does not deal with the authority of the legislature to protect the community by these various means. There is, of course, no preventive detention statute in Florida, and we have been cited to no authority that would allow preventive detention on the basis of a record consisting of a prior acquittal and other arrests resulting in no adverse court action.
On the other hand, the trial court may properly consider the defendant's respect for the law, including evidence of past criminal conduct, in determining what conditions to impose upon the defendant's pretrial release in order to secure the defendant's appearance. If the trial court reasonably determines, based upon a consideration of evidence of the factors set out in Rule 3.130(b)(4)(iii), including the defendant's character and record of past convictions, that a bail bond if a certain amount or other conditions are necessary to assure the defendant's appearance, then such bond or conditions will be upheld. However, the trial court is not authorized to utilize bail for purposes other than to secure the defendant's appearance. It is one thing to utilize evidence of the past misconduct of a defendant for the purpose of determining what conditions are necessary to secure a defendant's appearance and quite another to utilize pretrial incarceration or bail as a means to prevent possible future misconduct by the defendant.
By and large, our system of criminal justice deals with crime, and those who commit crime, only after the fact. Preventive measures, especially those that involve involuntary detention, have generally been sharply limited to situations involving real and imminent peril to the detainee or others. This general scheme of punishment after the fact is, of course, predicated on our basic belief that a person should be presumed innocent and should not lose his liberty until after he has been tried and convicted of criminal conduct. These basic beliefs, and our adherence to them, have stood us in good stead for a long time and are part of the basic constitutional underpinnings which distinguish our form of government from most others. In times of stress, however, such as that produced by sharp increases in criminal activity and our frustration in dealing with the problem generally, or in dealing with a particular individual, we tend to overlook or question these basic beliefs in our anxiety to resolve the immediate problem.[6] In most instances we resist these tendencies and work our way through the problems. In others we might seek constitutional or legislative action to change the basic precepts we now find restrictive. In any case, however, so long as these concepts remain a part of our constitutional scheme, we are powerless to ignore their mandate So it is that in this case we must honor the right of pretrial *625 release on reasonable bail mandated by our state constitution.
Accordingly, for the reasons set out above, we hold that the trial court was in error in increasing the amount of the bail bond required to be secured by the petitioner for purposes of preventive detention. However, because the issue has been rendered moot by reason of the final disposition of petitioner's case in the trial court, we deny the petition.
In addition, because we believe this issue is clearly one of great importance, not only to the legal community, but also to the public at large, we hereby certify the following question to the Florida Supreme Court:
MAY A TRIAL COURT CONSIDER THE PROTECTION OF THE COMMUNITY AT LARGE FROM FUTURE POSSIBLE ACTS OF MISCONDUCT BY THE DEFENDANT IN DETERMINING THE AMOUNT OF A BAIL BOND TO BE POSTED BY THE DEFENDANT AS A CONDITION OF HIS PRETRIAL RELEASE?
DOWNEY and HERSEY, JJ., concur.
NOTES
[1] Pursuant to a plea agreement, the petitioner entered a plea of guilty to a misdemeanor charge of simple battery for which he was placed on six months probation, and all other charges were dismissed.
[2] Apparently the trial court concluded that the petitioner would be unable to post the higher bond, and hence the community would be protected by his continued incarceration. Otherwise, we fail to see how the setting of the higher bond would protect the community since such bond is issued only to secure the petitioner's subsequent appearance in court.
[3] Under this constitutional provision it has been held that the right to release on reasonable bail is secured even to those who are established bad risks. Gardner v. Murphy, 402 So.2d 525 (Fla. 5th DCA 1981). We do not have that issue before us and therefore express no view on the problem thus facing a trial judge who is convinced by the evidence that a defendant will run no matter what conditions are imposed. Of course the conditions for release of those who are obvious bail risks may be much more stringent than those set for persons who are not. And bail may be revoked if the conditions imposed are violated. Id.
[4] We are of the view that the trial court may impose conditions of good behavior upon the grant of pretrial release to a defendant and may subsequently revoke bail if such conditions are not honored. See Rules of Criminal Procedure 3.130(b)(4) and 3.130(h). Some decisions have suggested that the intelligent use of such conditions to monitor the defendant's pretrial conduct may also incidentally serve the purpose of preventing the defendant from engaging in continued misconduct. See People ex rel. Hemingway v. Elrod, 60 Ill.2d 74, 322 N.E.2d 837 (1975).
[5] One panel of the United States Fifth Circuit has expressly stated that Florida trial courts are without authority to utilize bail for purposes of preventive detention:

The State also has an interest in denying pretrial release to a defendant who presents an unreasonable danger to the community. [Citations omitted.] However, the State may not use bail to serve this end.
Pugh v. Rainwater, 557 F.2d 1189 (1977). Upon en banc reconsideration of the same case, the full court expressly declined to comment on this issue. Pugh v. Rainwater, 572 F.2d 1053 (1978).
[6] There is no right to bail after conviction. Accordingly, the legislature's right to limit bail after conviction has been upheld. Hart v. State, 405 So.2d 1048 (Fla. 4th DCA 1981). We have also held that a trial court may properly consider the likelihood of defendant's committing other offenses in considering bail pending appeal. Baker v. State, 213 So.2d 285 (Fla. 4th DCA 1968).