890 So.2d 1173 (2004)
Ignacio HERNANDEZ, Petitioner,
v.
Richard ROTH, as Sheriff of Monroe County, etc., Respondent.
No. 3D04-869.
District Court of Appeal of Florida, Third District.
December 29, 2004.
Charles M. Milligan, Key West, for appellant.
Charles J. Crist, Jr., Attorney General, and Thomas C. Mielke, Assistant Attorney General, for appellee.
Before RAMIREZ and SHEPHERD, JJ., and COBB, WARREN H., Senior Judge.
SHEPHERD, J.
Ignacio Hernandez petitions this court for an original writ of habeas corpus. See Art. V, § 4(b)(3), Fla. Const.; Fla. R.App. P. 9.030(b)(3). We deny the writ.

I. Facts
On February 19, 2004, Petitioner was arrested and charged by information with possession of cocaine with intent to sell, and battery on a law enforcement officer. On February 20, 2004, Petitioner made his *1174 first appearance and was released on bond with the special condition that he undergo urinalysis three times a week  through pretrial services  to test for the presence of illegal drugs. On March 4, 2004, Petitioner moved to modify (i.e. rescind) the special condition. On March 30, 2004, the court held a hearing and denied the motion.[1] The State opposed the motion because the defendant was alleged to have battered a police officer, was found in possession of a large quantity of cocaine (23 grams in 35 individual baggies) and had collected nine previous felony and eight previous misdemeanor arrests, albeit being but 22 years of age. On April 15, 2004, Petitioner filed the instant writ.

II. Standard of Review
Matters relating to the setting of bail and the conditions attached to a defendant's pre-trial release on bail are reviewed under an abuse of discretion standard. Rodriguez v. McRay, 871 So.2d 1001 (Fla. 3d DCA 2004). Because trial judges are in a superior position to determine what conditions will be required to ensure that the defendant will appear in future proceedings and that the defendant is not a risk to the community, a defendant seeking a writ of habeas corpus "must adduce evidence sufficient to overcome the presumption of correctness of the trial court's order." State ex rel. Smith v. Untreiner, 246 So.2d 158 (Fla. 1st DCA 1971) (affirming bail conditions).

III. Discussion
The Florida Constitution makes provision for pre-trial release of almost all arrestees. Art. I, § 14, Fla. Const. Fla. R.Crim. P. 3.131(a) reads in pertinent part: "Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions." The key phrase is reasonable conditions. Section 903.046 of the Florida Statutes provides a broad, non-exclusive list of factors that the legislature instructs the court "shall consider" in determining the conditions of bail.[2] It includes, inter alia, the nature of the offense, the weight of the evidence, the defendant's ties to the community, and any "past conduct" of the defendant. Furthermore, subsection (k) even more broadly authorizes the trial court to consider "any other facts that the court considers relevant." Id. These wide-ranging factors are consistent with the trial court's difficult task of balancing the defendant's constitutional right to pre-trial release with the need to protect the community and ensure the defendant's appearance at future proceedings.
We conclude that the trial court did not abuse its discretion in requiring that the defendant undergo urinalysis. The Petitioner argues that "it is clear that [thrice-weekly] urinalysis and reporting to pre-trial services is not one of the conditions set forth in the rule." Petitioner is factually correct, but incorrect to suggest that that fact is of any legal consequence. The legislative directive is broad and non-exclusive. It wisely leaves the ultimate decision relating to conditions of release to the sound judgment and experience of the trial judge.[3]
*1175 Aside from the issue of reasonable bail conditions, the trial court's decision to require urinalysis has support in a separate law. Section 903.047 mandates that: "As a condition of pretrial release ... the court shall require that ... the defendant refrain from criminal activity of any kind ..." § 903.047(1)(a), Fla. Stat. (2004). The additional condition requiring urinalysis in issue here not only meets the requirements of the pre-trial release statute, but more generally assures that the defendant complies with the law as a whole while on release. See Williams v. Spears, 814 So.2d 1167, 1169 (Fla. 3d DCA 2002) (upholding the constitutionality of the statute and noting that "a release on bond ((or other pretrial release)) is a release on good behavior"). Possessing illegal drugs, whether they are on your person or in one's body, is a crime. Bail may not be used to punish a pretrial defendant, Rodriguez, 871 So.2d at 1003, but it cannot be said that requiring a drug offender arrestee to be closely monitored for the use of illegal drugs constitutes punishment. Finally, we note that "the object of bail in a criminal case is to put the accused as much under the power of the court as if he were in custody of the proper officer ..." Id. The condition of pretrial release challenged here is entirely consistent with this principle.
Petitioner's reliance on Glinton v. Wille, 457 So.2d 563 (Fla. 4th DCA 1984), is inapposite. In Glinton, the defendant was charged with possession with intent to sell marijuana. As a condition of bond, the court ordered the defendant to stay out of a "field" at a certain address. The "field" was a hotspot for drug and criminal activity. The appellate court noted that the restriction was designed to prevent the defendant from selling drugs. But it also necessarily included a prohibition on otherwise lawful conduct (i.e., entering the "field" was not itself criminal). Here, the restriction does not prohibit the Petitioner from engaging in any lawful activity. Rather, it merely reflects the appropriate and common sense judgment of the court below to provide itself with measurable certainty that the defendant is not tempted by illegal activity of a type for which the court had ample reason to be concerned while awaiting trial.
Petitioner further argues that his special condition violates the rule in Harp v. Hinckley, 410 So.2d 619 (Fla. 4th DCA 1982). In Harp, the Fourth District Court of Appeal issued a writ of habeas corpus because the trial judge, with knowledge of the petitioner's indigent status, purposefully set bond at $10,000 to keep the petitioner imprisoned while awaiting trial for attempted murder. Id. at 621, n. 2. There, the appellate court justly concluded that the trial judge violated the petitioner's right to pre-trial release. Unfortunately for the Petitioner, the Harp facts have no bearing on the present petition. The special condition requiring urinalysis imposed on the Petitioner was not designed to keep the Petitioner in jail.

III. Conclusion
The trial court's decision to require urinalysis as a condition of pretrial release was within the court's discretion and reasonable.
The writ of habeas corpus is denied.
COBB, WARREN H., Senior Judge, concurs.
*1176 RAMIREZ, J. (dissenting).
I must respectfully dissent. The majority opinion today approves conditions to release on bail which are not permitted by statute or any other legal authority.
I agree that trial judges have discretion to set conditions to a defendant's pre-trial release, provided those conditions ensure the defendant's appearance in future proceedings and reduce the risk of harm to the community. Section 903.046, Florida Statutes (2004) entitled "[p]urpose of and criteria for bail determination," lists those two as the only purposes for bail determination in criminal proceedings: (1) "to ensure the appearance of the criminal defendant at subsequent proceedings and [2] to protect the community against unreasonable danger from the criminal defendant." By implication, other purposes are excluded. It would therefore be improper for the trial court to use bail to (1) punish a defendant; (2) get an early start on rehabilitation; or (3) exact restitution.
All the cases cited by the majority can reasonably be viewed as having those two statutory purposes in mind. Here, the court approved a requirement that the defendant undergo, three times a week, a urinalysis test. He must thus report to pre-trial services three times a week and provide a sample of his urine for testing. It is not clear from this record how burdensome this is to Ignacio Hernandez, who may or may not own a car, nor who has to pay for these tests, but three times a week he must find his way to the nearest pre-trial services office and submit to a warrantless search of his person without any probable cause that he has committed a crime. I fail to see how this insures his appearance in court. In fact, if the defendant thinks his urine may not be clean, he is more likely to abscond. Neither does clean urine protect the community. Admittedly, the defendant was charged with purchasing cocaine and possession of marijuana. Thus, if the defendant is a drug user, having to provide clean urine will deter him from using drugs in the future  a salutary goal in his rehabilitation, but one which is not authorized by statute.
The majority, however, without citing any authority, states that "[t]he legislative directive is broad and non-exclusive." I believe that if the legislature wanted to authorize trial judges to promote any purpose in bail determinations, it could have done so. After this decision, bail conditions will be restricted only by the trial court's imagination. Thus, a judge could order a defendant to volunteer his services at a local charity, attend Alcoholic Anonymous meetings, take an Anger Control course, or even submit to lie detector tests. The fact that section 903.046(2)(k) authorizes the trial court to consider "[a]ny other facts that the court considers relevant," does not expand the clear and specific purposes delineated in section 90.046(1).
Furthermore, I fail to see how the language quoted from section 903.047 supports the majority, where the court may require the defendant to refrain from criminal activity of any kind. Certainly the trial court can require the defendant to abstain from the use of any drugs and, if he is arrested on a new charge, it can rescind the defendant's release.
Rule 3.131, of the Florida Rules of Criminal Procedure, governs pretrial release. It states:
(a) Right to Pretrial Release. Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community *1177 from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.
As in the statute, the rule addresses (1) the protection of the community, (2) assure the presence of the accused at trial, or (3) assure the integrity of the judicial process.
Rule 3.131(b) goes on to expand on conditions of release. It states:
(1) Unless the state has filed a motion for pretrial detention pursuant to rule 3.132, the court shall conduct a hearing to determine pretrial release. For the purpose of this rule, bail is defined as any of the forms of release stated below. There is a presumption in favor of release on nonmonetary conditions for any person who is granted pretrial release. The judicial officer shall impose the first of the following conditions of release that will reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process; or, if no single condition gives that assurance, shall impose any combination of the following conditions:
(A) personal recognizance of the defendant;
(B) execution of an unsecured appearance bond in an amount specified by the judge;
(C) placement of restrictions on the travel, association, or place of abode of the defendant during the period of release;
(D) placement of the defendant in the custody of a designated person or organization agreeing to supervise the defendant;
(E) execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; provided, however, that any criminal defendant who is required to meet monetary bail or bail with any monetary component may satisfy the bail by providing an appearance bond; or
(F) any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours.
Hernandez argues that the condition that he provide thrice-weekly urine tests is not one of the conditions set forth in rule 3.131(b). The majority admits that this is factually correct, but concludes that this has no legal consequence. Thus the effort that was expended in drafting into the rule six specific conditions, which conditions were then approved by the Florida Supreme Court, was basically a waste of time. The rule could have simply stated that the trial court may decide whatever conditions of release are appropriate according to its sound judgment and experience.
None of the cases cited by the majority support this urinalysis condition. The imposition of house arrest in Alvarez v. Felton, 639 So.2d 994 (Fla. 3d DCA 1994) was arguably for the protection of the public. See also Williams v. Spears, 814 So.2d 1167 (Fla. 3d DCA 2002) (holding section 903.0471, Florida Statutes, constitutional and stating that the trial court may revoke pretrial release where the defendant commits a new crime).[4] The majority also *1178 relies on Rodriguez v. McRay, 871 So.2d 1001 (Fla. 3d DCA 2004), an opinion also authored by Judge Shepherd, which held that because both of petitioner's failures to appear in court as required were unavoidable, the trial court abused its discretion in increasing the amount of petitioner's bond.
The one case that is indistinguishable from our situation is Glinton v. Wille, 457 So.2d 563, 564 (Fla. 4th DCA 1984), where the Fourth District struck a condition of bond that the petitioner stay out of a "field" on the southeast corner of Wingfield Street and 15th Avenue South in Lake Worth, Florida. That "field" was located in the petitioner's neighborhood and was known as an area where drugs were sold. The court stated:
There is no evidence that the purpose of the trial court's order imposing the condition was other than to prevent him from engaging in the selling of illegal drugs. The "field" was a known area for drug transactions, and petitioner was accused of that very crime. In Harp v. Hinckley, 410 So.2d 619 (Fla. 4th DCA 1982), this court recognized that the primary purpose of bail is to ensure the defendant's presence at trial and that it is improper to use bail "as a means to prevent possible future misconduct by the defendant." Id. at 624.[5] Florida Rule of Criminal Procedure 3.131(a), as amended in 1983, does permit use of conditions of release to protect persons in the community from physical harm, but that purpose is not applicable here. See also Carter v. Carson, 370 So.2d 1241 (Fla. 1st DCA 1979) (condition of pretrial release prohibiting defendants from selling obscene material improper as not bearing any relationship to insuring their appearance at future court proceedings). Thus, the trial court could not impose the condition on petitioner where its purpose in doing so was other than as permitted by Rule 3.131, Florida Rules of Criminal Procedure. We find the condition invalid.
Id. at 564-65. Instead of relying on the language in the opinion, the majority seeks to distinguish the court's clear reasoning by stating that the condition was improper because it "also necessarily included a prohibition on otherwise lawful conduct (i.e., entering the "field" was not itself criminal)." Besides the fact that this was not a part of the court's reasoning, the majority fails to explain what statute is violated by testing positive in a urine test, unless one is driving.[6] The majority opinion then goes on to state that it is now appropriate for a court "to provide itself with measurable certainty that the defendant is not tempted by illegal activity of a type for which the court had ample reason to be concerned while awaiting trial." [Majority opinion, page 1175]. Not only am I troubled *1179 by language that seems to authorize trial courts to monitor defendants' temptations, but I am also distressed that the "ample reason to be concerned" is ostensibly the fact that the defendant was arrested for purchasing cocaine and possessing marijuana. This, in my view, is inconsistent with Hernandez's presumption of innocence. See State v. Rodriguez, 575 So.2d 1262 (Fla.1991).
Our decision today places us in direct conflict with the Fourth District in Glinton and Harp and the First District in Carter v. Carson, 370 So.2d 1241, 1242 (Fla. 1st DCA 1979) (concluding that the trial court had no authority to set a special condition which enjoined the defendant from engaging in employment connected with or dealing in the possession of obscene materials because the condition was not provided for by the rules). I would therefore grant the writ of habeas corpus. We should otherwise certify conflict with our sister courts.
NOTES
[1] Petitioner did not seek to alter the amount of his bond. Thus, the only issue before this court is the special condition.
[2] The statute does not limit its scope to monetary conditions. It specifically refers to "bail or other conditions."
[3] For example, this court has previously affirmed the imposition of "house arrest" and wearing an electronic security bracelet as a condition of release even though they are not expressly included in the statute. Alvarez v. Felton, 639 So.2d 994 (Fla. 3d DCA 1994). See also Williams v. Spears, 814 So.2d 1167 (Fla. 3d DCA 2002) (affirming pretrial services in lieu of bond); Houser v. Manning, 719 So.2d 307, 308 (Fla. 3d DCA 1998) (affirming the additional condition to "not use, possess, or carry a firearm, gun, weapon, or ammunition").
[4] Without citing any authority, the majority states [page ___] that possessing illegal drugs "in one's body, is a crime." The majority is wrong. I know of no law that would be violated by testing positive for drugs. At most, it could provide "a link in the chain of evidence which could support a prosecution for the possession, at least, of such drugs." Albert v. Salce, 439 So.2d 339, 340 (Fla. 3d DCA 1983). See also Jefferson v. State, 549 So.2d 222 (Fla. 1st DCA 1989) (upholding a conviction of possession of cocaine where the defendant sampled the illegal substance by using a playing card to dip it into a larger bag of cocaine, not because it was in his body, but because he briefly possessed it on the card).
[5] Our decision today is also irreconcilable with Harp v. Hinckley, 410 So.2d 619 (Fla. 4th DCA 1982), which the majority rejects stating that "[u]nfortunately for the Petitioner, the Harp facts have no bearing on the present petition." This ignores the facts as set forth in the opinion which reversed the trial judge, not for setting the bond too high as the majority implies, but for imposing a bond for the express purpose of restraining the juvenile from committing future acts of misconduct. After the Harp decision, rule 3.131 was amended to permit use of conditions of release for the protection of the community.
[6] Ironically, this could be satisfied by forcing the defendant to drive to the nearest pre-trial release office to be tested for drugs.