NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| CHRISTIAN FREDERICK MOE IV, | Court of Appeals No. A-14546 |
| Appellant, | Trial Court No. 1SI-23-00173 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2804 — May 2, 2025 |

Appeal from the Superior Court, First Judicial District, Sitka, Amanda L. Browning, Judge.

Appearances: Bridget Lynn, Assistant Public Defender, and Terrence Haas, Public Defender, Anchorage, for the Appellant. Madison M. Mitchell, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge TERRELL.

Christian Frederick Moe IV was indicted on one count each of first-degree sexual abuse of a minor and third-degree fear assault.[1] At Moe's first felony appearance,

---

[1] AS 11.41.434(a)(1) and AS 11.41.220(a)(1)(A), respectively.

the court imposed a $50,000 cash appearance bond and ordered that he be supervised by the Pretrial Enforcement Division.

Moe subsequently filed three successive applications for bail review hearings, and the superior court held three hearings. At the first two hearings, the superior court denied Moe's requests to modify bail. At the third hearing, the superior court modified Moe's bail by deleting the $50,000 cash appearance bond and imposing a $25,000 cash performance bond. It also ordered that Moe submit to electronic monitoring, enter a residential substance abuse treatment program, and remain there on house arrest with limited passes.

Moe appeals the superior court's last bail modification order on three grounds. First, Moe argues that AS 12.30.011(d)(2), the statutory provision that creates a rebuttable presumption that persons charged with certain offenses pose elevated appearance and performance risks, is unconstitutional. Second, Moe argues that the superior court erroneously speculated that he might violate his conditions of release, relying on the nature of his offense rather than on his individual characteristics. And third, Moe argues that the court failed to explain why the $25,000 cash performance bond (an amount he claims he cannot afford) is necessary to protect the victim and the community given the other conditions in place.

For the reasons explained in this opinion, we conclude that the statutory presumption in AS 12.30.011(d)(2) is constitutional, and that the superior court may rely on this presumption to make findings regarding a defendant's appearance or performance risk. Because the superior court in this case found that the presumption was not rebutted, it was proper for the court to infer that Moe was a danger to the community without an individualized analysis beyond the nature of the charges. However, we agree with Moe that the superior court did not adequately explain why the $25,000 cash performance bond is necessary to ensure that he complies with his conditions of release. We therefore remand this case for further proceedings consistent with this opinion.

*Procedural history*

In September 2021, the Sitka Police Department received a report that Moe forced his girlfriend's nine-year-old son, R.M.F., to perform fellatio on Moe by holding a knife to R.M.F.'s head and threatened to hurt R.M.F's mother with a knife if the matter was reported to law enforcement.[2] During the ensuing police investigation, R.M.F. was interviewed three separate times at a child advocacy center. During the first interview, R.M.F. indicated that he did not feel safe around Moe. But he did not disclose during either the first or second interview that Moe had sexually abused him. During the third interview, R.M.F. stated that Moe held a knife to his head on five separate occasions and forced him to perform fellatio on Moe.

On November 9, 2023, Moe was indicted on one count of first-degree sexual abuse of a minor and one count of third-degree fear assault.[3]

Two days later, Moe was arraigned on these charges and the Public Defender Agency was appointed to represent him. At his arraignment, a magistrate judge imposed a $50,000 cash appearance bond, ordered that Moe be supervised by the Pretrial Enforcement Division (PED), and imposed additional conditions of release that prohibited Moe from consuming alcohol, possessing weapons, contacting R.M.F. or his mother, and leaving Sitka without the court's permission.

*First and second bail review hearings*

On September 5, 2024, the superior court held a first bail review hearing at Moe's request. Moe proposed that the superior court remove the $50,000 cash

---

[2]   The tipster also provided the police with a video in which Moe appeared to be touching the boy's buttocks and genital area and running his hand up the boy's shirt. Moe later moved to suppress this video, and following an evidentiary hearing, the superior court ordered that this video was inadmissible.

[3]   AS 11.41.434(a)(1) and AS 11.41.220(a)(1)(A), respectively.

appearance bond and order him to enter a residential substance abuse treatment program at the Mt. Juneau Recovery House (Mt. Juneau).

The State objected to this proposal. The prosecutor noted concerns that Mt. Juneau was not an appropriate facility for Moe because it predominantly provided services for people struggling with substance abuse disorders and was unsecured, as it gave its residents passes into the community. The prosecutor also informed the court that Moe had a previous conviction for violating his conditions of release (VCOR).

The superior court denied Moe's request to modify bail, referencing the following considerations: Moe was charged with an unclassified felony; Moe could easily walk away from Mt. Juneau and have access to the community or flee because the facility was potentially unsecured and provided unsupervised passes; and Moe had a prior VCOR conviction.

On September 26, 2024, the superior court held a second bail review at Moe's request. Moe's second bail proposal was similar to his first proposal. Moe again proposed that the court remove the $50,000 cash appearance bond, order that he enter the residential treatment program at Mt. Juneau, and have the Department of Corrections transfer him there. Additionally, Moe proposed that the court place him on electronic monitoring and order that he remain at the treatment facility under house arrest.

At this second hearing, Moe's defense attorney discussed the security arrangements at the Mt. Juneau facility. The attorney stated that Mt. Juneau has a staffed front desk, where security personnel are always located, and that staff can call the police if a client leaves the facility without permission. The attorney also stated that Mt. Juneau provides clients with passes to leave the facility for medical appointments, legal appointments, religious services, meetings with government officials, and to go to the gym.

The prosecutor opposed Moe's second bail request. The prosecutor reiterated that Mt. Juneau is a "non-lockdown facility," and noted that electronic

monitoring would not prevent Moe from absconding. The prosecutor added that because Juneau has an airport and a harbor with daily departures, Moe could "easily . . . disappear" if he absconded. In response, the defense attorney suggested that the court could order Moe to stay away from airports and harbors, and this order could be enforced by electronic monitoring.

The State then called Probation Officer Linda Wahl to testify. Wahl testified that she had called Mt. Juneau and spoke with the program director about the facility's security. Wahl testified that while the program would notify the police if a client absconded, the director "made very sure that [she] understood that this was a completely voluntary program" and that Moe "would be able to leave at any time." Wahl also testified that Mt. Juneau had a reputation for not being "very forthright," and expressed skepticism that Mt. Juneau would actually call the police to report if a client absconded.

The superior court denied Moe's second bail proposal, concluding that it "had concerns over the safety of the community without any monetary posting." The court acknowledged that under Moe's proposal, he would be on electronic monitoring and Mt. Juneau could notify the police if Moe absconded. But the court explained that even with these conditions, it had appearance concerns because Moe could remove his ankle monitor, and performance concerns because "electronic monitoring may tell us where he is, but it doesn't tell us who he's with or who he's involved with."

After the superior court denied this proposal, the defense attorney asked the court to consider a substitute proposal. In addition to the previously proposed non-monetary conditions of release, Moe proposed adding a $1,500 cash bond — a sum that his attorney represented was "essentially . . . all of [Moe's] money." The court

summarily denied this substitute proposal, noting that Moe had not detailed his previous efforts to post monetary bail.[4]

*Third bail review hearing*

On October 17, 2024, the superior court held a third bail review hearing at Moe's request. Moe's third bail proposal again asked that he enter the residential treatment program at Mt. Juneau and be placed on electronic monitoring with house arrest. But this time, instead of proposing that the court delete the $50,000 cash appearance bond, Moe proposed reducing the $50,000 cash appearance bond to $1,700 (the amount of that year's Permanent Fund Dividend check). Additionally, the defense attorney clarified that Moe was only requesting passes to leave Mt. Juneau for medical treatment and legal visits.

The defense attorney then discussed the bail factors in AS 12.30.011(c). Through these factors, the attorney argued the following: that the State's case was weak, because R.M.F. only disclosed the abuse in the third forensic interview; that Moe had strong community ties, because he was a lifelong Alaska resident; that Moe had a history of gainful employment; that while Moe had VCOR and disorderly conduct convictions, they were attributable to his struggles with alcohol; that Moe only had $1,725 to his name; and that Moe had tried, unsuccessfully, to borrow additional money from his family to meet bail.

The defense then called Fred Sweetski, the Behavioral Health Director at Mt. Juneau, to testify. Sweetski testified that it is "not difficult at all" for clients to walk away from the Mt. Juneau facility. Sweetski also testified that while Mt. Juneau does

---

[4] We note that in evaluating a defendant's ability to pay a monetary bail, a trial judge is not obligated to rely on defense counsel's representations about the defendant's finances, and can require that direct evidence be presented. *Cf. Craft v. State*, 2023 WL 6294965, at *2 (Alaska App. Sept. 22, 2023) (unpublished bail order) (noting that "despite the trial court's comments at the first bail review hearing that it did not have detailed information about the assets available to Craft to post bail, Craft did not provide any information about his finances to the court at the second bail review hearing").

not have any "legal duty" to report a client who leaves without permission, the facility would report clients that are under "any condition of release from DOC" and abscond. Sweetski was also questioned about whether children are allowed at the Mt. Juneau facility, and he explained that while no children resided at Mt. Juneau, children were permitted at the facility as visitors.[5]

The prosecutor opposed Moe's third bail proposal. The prosecutor argued that Moe had not "overcome the rebuttable presumption that he's a flight risk" for the following reasons: Mt. Juneau was an unsecured facility, Mt. Juneau was not obligated to report him if he absconded, and Moe could be missing from Mt. Juneau "for hours before anybody is notified that he's missing."

The superior court then analyzed Moe's bail proposal under the factors in AS 12.30.011. After reviewing the bail factors in AS 12.30.011(c), the court discussed the rebuttable presumption in AS 12.30.011(d)(2) — that if a person is charged with certain offenses, including unclassified or sexual felonies, "there is a substantial risk that the person will not appear and the person poses a danger to the victim, other persons, or the community."[6] The court concluded that Moe had successfully rebutted the presumption that he was a substantial appearance risk, but that the court had concerns about Moe's performance for the following reasons: Moe had a VCOR conviction, children were permitted as visitors to Mt. Juneau, and Moe would have access to children in the community if he was out on a pass. Given these concerns, the court ruled that Moe had not "completely overcome" the presumption in AS 12.30.011(d)(2) that he was a danger to the victim and community, and that "substantial" monetary bail was "appropriate."

---

[5]   Fred Sweetski also testified that one of the program clinicians treated children, so there were occasionally children on campus for appointments with that clinician.

[6]   AS 12.30.011(d)(2)(A).

The court then modified Moe's bail as follows. First, the court deleted the $50,000 cash *appearance* bond and imposed a $25,000 cash *performance* bond. In issuing this order, the court acknowledged Moe's contention that he "has $1,700 to his name," but found that a $25,000 cash performance bond was warranted. Additionally, the court imposed the following non-monetary conditions of release: that Moe enter residential treatment at Mt. Juneau, remain on house arrest unless attending medical or legal appointments, not contact R.M.F. or his mother, and submit to electronic monitoring with exclusion zones within one mile of the airport, harbor, and ferry terminal.

This appeal followed.

*Alaska Statute 12.30.011(d)(2) does not infringe on the Alaska Constitution's right to bail*

On appeal, Moe argues that AS 12.30.011(d)(2), the rebuttable presumption that people charged with certain offenses pose elevated appearance and performance risks, is unconstitutional. We reject this contention, and we take this opportunity to clarify how the presumption in AS 12.30.011(d)(2) operates in concert with the other provisions of Alaska's bail statutes.

The Alaska Constitution guarantees the accused the right to be "released on bail,"[7] and the Alaska and United States Constitutions prohibit the imposition of "excessive bail."[8] Interpreting these provisions, this Court has held that trial courts may

---

[7]    Alaska Const. art. I, § 11; *Martin v. State*, 517 P.2d 1389, 1394 (Alaska 1974).

[8]    U.S. Const. amend. VIII; Alaska Const. art. I, § 12; *Pisano v. State* (*Pisano I*), 2018 WL 11306173, at *2 (Alaska App. May 24, 2018) (unpublished bail order) (explaining that "[e]xcessive bail is that which goes beyond the amount actually necessary to fulfill the purposes of bail") (first citing *Stack v. Boyle*, 342 U.S. 1, 5 (1951); and then citing *Doe v. State*, 487 P.2d 47, 51 (Alaska 1971)).

not refuse to set bail altogether,[9] may not impose a "no bail" order,[10] and may not impose bail for an improper reason, such as to punish a defendant.[11] Instead, trial courts must impose bail conditions that are tailored to "reasonably assure the defendant's appearance and the safety of the community."[12] While trial courts may impose monetary bail above what the defendant can afford,[13] when doing so they must explain "why a particular monetary bail is necessary in a given case."[14]

Alaska Statute 12.30.011 provides standards and procedures that constrain the trial court's exercise of discretion when setting bail. Under this statute, the court must first determine whether to release a defendant on their personal recognizance or an unsecured appearance bond, or whether to impose additional conditions of release.[15] If a defendant is charged with certain offenses, including unclassified or sexual felonies, this analysis is governed by AS 12.30.011(d)(2). Under this provision, there is a rebuttable presumption that the defendant is a substantial appearance risk and is a

---

[9]   *See Hamburg v. State*, 434 P.3d 1165, 1166-67 (Alaska App. 2018).

[10]   *See id.* at 1165-67.

[11]   *Francis v. State*, 2021 WL 1346285, at *2-3 (Alaska App. Jan. 15, 2021) (unpublished bail order).

[12]   *Pisano I*, 2018 WL 11306173, at *2 (first citing *Stack v. Boyle*, 342 U.S. 1, 5 (1951); then citing *Doe v. State*, 487 P.2d 47, 51 (Alaska 1971); and then former AS 12.30.011 (pre-2018)).

[13]   *Gilbert v. State*, 540 P.2d 485, 486 n.12 (Alaska 1975) (citing *Reeves v. State*, 411 P.2d 212 (Alaska 1966).

[14]   *Pisano v. State* (*Pisano II*), 2019 WL 12043666, at *3 (Alaska App. Jan. 16, 2019) (unpublished bail order).

[15]   AS 12.30.011(a)-(b).

danger to the victim and community.[16] If this presumption is not rebutted, the presumption remains and the court must impose additional conditions of release.[17]

Once the trial court finds that additional conditions of release are warranted, the court must next decide which specific conditions to impose. This analysis is governed by AS 12.30.011(b). Under this provision, the court must "impose the least restrictive condition or conditions that will reasonably ensure the person's appearance and protect the victim, other persons, and the community."[18] Section (b) lists twenty-one possible conditions available to the court, including monetary bonds and non-monetary conditions.[19]

On appeal, Moe claims that the rebuttable presumption in AS 12.30.011(d)(2) is unconstitutional. Moe argues that the statute requires a trial court "to set extremely restrictive and onerous bail conditions," which defendants cannot afford, and that relying on a statutory presumption to set unaffordable bail is unconstitutional under this Court's decision in *Hamburg v. State*.

In 2018, this Court held in *Hamburg* that the pre-2018 version of AS 12.30.011(d)(2) violated the defendant's constitutional right to bail.[20] This former version of AS 12.30.011(d)(2) stated that for persons charged with certain offenses

> there is a rebuttable presumption that *no condition or combination of conditions* will reasonably assure the

---

[16] AS 12.30.011(d)(2).

[17] AS 12.30.011(b), (d)(2).

[18] AS 12.30.011(b).

[19] *Id.*

[20] *Hamburg v. State*, 434 P.3d 1165, 1167 (Alaska App. 2018) (interpreting former AS 12.30.011(d)(2) (pre-2018)).

appearance of the person or the safety of the victim, other persons, or the community.[21]

The superior court in *Hamburg*, relying on this former version of AS 12.30.011(d)(2), found that no condition or conditions would reasonably ensure the defendant's appearance and performance, and accordingly issued a "no bail" order.[22] On appeal, we held that "no bail" orders violate Article I, Section 11 of the Alaska Constitution, and that former AS 12.30.011(d)(2) was unconstitutional because it prompted the court to refrain from setting bail.[23]

Moe acknowledges that the legislature has since amended AS 12.30.011(d)(2) and that the current statute is worded differently than the statute that we held unconstitutional in *Hamburg*. But Moe contends that the current statute does not alleviate the constitutional concerns that we identified in *Hamburg*. Moe analogizes a statutory presumption that leads to a "no bail" order with a presumption that prompts "extremely restrictive and onerous bail conditions," arguing that both violate Article I, Section 11 of the Alaska Constitution.

The proper interpretation of a statute is a question of law that we decide *de novo* using our independent judgment.[24] Statutes are construed "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[25] Alaska courts apply

---

[21]  Former AS 12.30.011(d)(2)(A) (pre-2018) (emphasis added).

[22]  *Hamburg*, 434 P.3d at 1165.

[23]  *Id.* at 1165-67.

[24]  *Seaman v. State*, 499 P.3d 1028, 1034 (Alaska App. 2021).

[25]  *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017) (citing *Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014)).

a sliding scale approach to statutory interpretation, "under which 'the plainer the language of the statute, the more convincing contrary legislative history must be.'"[26]

We begin our analysis with the text. The current version of 12.30.011(d)(2)(A) provides:

> (d) In making a finding regarding the release of a person under this chapter
>
> [. . . .]
>
> (2) there is a rebuttable presumption that there is a substantial risk that the person will not appear and the person poses a danger to the victim, other persons, or the community, if the person is
>
> (A) charged with an unclassified [or] sexual felony[.]

Unlike the former presumption, which directed the court not to impose any "conditions" of release, the plain language of this current presumption does not mention release "conditions" or direct the court to impose or refrain from imposing specific conditions.[27] Instead, the current presumption in subsection (d)(2) directs the court to make a "finding" that the defendant poses a "substantial risk" of nonappearance and a danger to the victim or community.[28]

If the court finds that this presumption has not been rebutted, then it must impose release conditions in accordance with a provision of the bail statute — AS 12.30.011(b) — that applies *every* time a court setting bail imposes release conditions. This provision applies when the court makes findings under the rebuttable presumption in AS 12.30.011(d)(2) and also when the court makes findings that releasing a defendant on their personal recognizance or an unsecured bond would be

---

[26] *Id.* at 1121-22 (quoting *Bartley v. State, Dep't of Admin., Teachers' Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005)).

[27] *Compare* former AS 12.30.011(d)(2) (pre-2018) *with* AS 12.30.011(d)(2).

[28] AS 12.30.011(d)(2).

insufficient.[29] Under AS 12.30.011(b), the court is directed to "impose the least restrictive condition or conditions that will reasonably ensure the person's appearance and protect the victim, other persons, and the community."[30] While this provision requires that some condition be imposed, it does not direct the court to impose any condition in particular.

Given that AS 12.30.011(b) is a general provision, and given that neither AS 12.300.011(d)(2) nor AS 12.30.011(b) directs the court to impose any particular conditions of release, Moe's contention that the rebuttable presumption prompts courts to impose "extremely restrictive and onerous bail conditions" is unsupported by the text of the bail statute.

We have also reviewed the legislative history of the bail statute and find that it reinforces this interpretation.

In 2019, the Alaska legislature enacted H.B. 49, a comprehensive crime bill that repealed most of S.B. 91 and reenacted the provisions that were in place before S.B. 91.[31] That legislative session, the Governor transmitted multiple crime bills to the legislature for consideration, including H.B. 49, H.B. 50, and S.B. 33.[32] At the time of transmittal, the Governor's proposed amendments to AS 12.30.011 were contained in

---

[29] *See* AS 12.30.011(a)-(b), (d).

[30] AS 12.30.011(b).

[31] *See* SLA 2019, ch. 4, § 59.

[32] Transmittal Letter from Governor Michael J. Dunleavy regarding S.B. 33 (Jan. 22, 2019) (located on the Alaska Legislature's website on bill's "Documents" page); Transmittal Letter from Governor Michael J. Dunleavy regarding H.B. 49 (Jan. 22, 2019) (located on the Alaska Legislature's website on bill's "Documents" page); Transmittal Letter from Governor Michael J. Dunleavy regarding H.B. 50 (Jan. 22, 2019) (located on the Alaska Legislature's website on bill's "Documents" page).

S.B. 33 and H.B. 50.[33] These crime bills initially proceeded separately through the legislature, but S.B. 33 became the primary bill discussing AS 12.30.011, with H.B. 50 eventually dying in committee.[34]

Midway through the legislative session, S.B. 33 was incorporated into C.S.H.B. 49, and C.S.H.B. 49 became the lead crime bill.[35] The legislative history of the 2019 amendment to AS 12.30.011 thus begins with S.B. 33.

S.B. 33 was first introduced in the Senate on January 23, 2019.[36] The first version of this bill contained the Governor's proposed language for the rebuttable presumption in subsection (d)(2), and this exact language was later approved by the legislature without amendment.[37]

On February 14, 2019, Alaska Department of Law Criminal Division Director John Skidmore testified on S.B. 33 before the Senate State Affairs Committee. He explained that S.B. 33 overhauled Alaska's bail statute by "repeal[ing] what was in S.B. 91" and reverting "back almost verbatim to what was there prior," but with one

---

[33] *See* S.B. 33, 31st Legislature, 1st Session, Version A, § 7 (as introduced by the Senate Rules Committee, Jan. 23, 2019); H.B. 50, 31st Legislature, 1st Session, Version A, § 7 (as introduced by the House Rules Committee, Feb. 20, 2019).

[34] H.B. 50 was introduced on February 20, 2019 and was the subject of two hearings before the House State Affairs Committee, on March 19, 2019, and April 16, 2019, at which point the bill ceased to progress.

[35] S.B. 33 proceeded through the Senate as an independent bill from January 23, 2019, the date of its introduction, until May 7, 2019, the date when Version C of S.B. 33 was incorporated into Version C of C.S.H.B. 49. *Compare* S.B. 33, 31st Legislature, 1st Session, Version C, § 7 (as introduced by the Senate Judiciary Committee, April 24, 2019) *with* C.S.H.B. 49, 31st Legislature, 1st Session, Version C, § 54 (as introduced by the House Finance Committee, May 7, 2019).

[36] S.B. 33, 31st Legislature, 1st Session, Version A (as introduced by the Senate Rules Committee, Jan. 23, 2019).

[37] *Compare* S.B. 33, 31st Legislature, 1st Session, Version A, § 7 (as introduced by the Senate Rules Committee, Jan. 23, 2019) *with* SLA 2019, ch. 4, § 59.

exception: changes were made to AS 12.30.011(d)(2).[38] Director Skidmore noted that the proposed language for AS 12.30.011(d)(2) contained a "different presumption" than the former law because that former presumption was "found to be unconstitutional by our courts."[39] He then explained the difference between the former provision and the proposed new provision as follows:

> [The former provision said] that there is a presumption that no conditions would be appropriate. [The proposed provision] just says that somebody is presumed dangerous, and the court needs to set appropriate conditions thereafter.[40]

On February 19, 2019, Director Skidmore again testified before the Senate State Affairs Committee. He explained that the former presumption in subsection (d)(2) was found "flat out unconstitutional" in *Hamburg* because it "potentially amounted to a presumption that a person could not have reasonable bail set."[41] Director Skidmore provided the following explanation for what the new presumption does:

> [I]t's presumed they are dangerous when they are charged with these types of crimes and then it's up to the court to determine what are the appropriate conditions to set with that presumption of dangerousness.[42]

---

[38]  Audio of Senate State Affairs Committee, S.B. 33, testimony of Criminal Division Director John Skidmore, 4:03 p.m. - 4:05 p.m. (Feb. 14, 2019).

[39]  *Id.* at 4:03 p.m. - 4:04 p.m.

[40]  *Id.* at 4:04 p.m. - 4:05 p.m.

[41]  Audio of Senate State Affairs Committee, S.B. 33, testimony of Criminal Division Director John Skidmore, 3:47 p.m. - 3:50 p.m. (Feb. 19, 2019).

[42]  *Id.* at 3:48 p.m. - 3:50 p.m.

On March 18, 2019, Alaska Deputy Attorney General Robert Henderson provided a legal memorandum to the Senate State Affairs Committee.[43] In this memorandum, Henderson explained that unlike the former presumption in section (d)(2), the proposed presumption does not authorize trial courts to issue "no bail" orders.[44] Rather, the proposed presumption mandates that "bail should be set," and that it be set in accordance "with the risks associated with defendants who are charged with the listed offenses in mind."[45]

On March 25, 2019, S.B. 33 was introduced in the Senate Judiciary Committee.[46] Director Skidmore again testified about the bill, providing prepared remarks and answering questions from committee members. After Director Skidmore provided his prepared remarks,[47] Senator Jesse Kiehl asked him to explain the difference between the former presumption and the new presumption in S.B. 33.[48] Director Skidmore replied that, while the former subsection (d)(2) provided certain defendants "no opportunity, none whatsoever, to get out of jail pretrial," S.B. 33 merely

---

[43] Memorandum from Robert E. Henderson, Deputy Attorney General to Senator Mike Shower regarding S.B. 33 (Mar. 18, 2019) (located on the Alaska Legislature's website on bill's "Documents" page).

[44] *Id.* at 5.

[45] *Id.*

[46] S.B. 33, 31st Legislature, 1st Session, Version B (as introduced by the Senate State Affairs Committee, Mar. 20, 2019); Minutes of Senate Judiciary Committee, S.B. 33, statement of Senator Shelley Hughes, 1:31 p.m. - 1:32 p.m. (Mar. 25, 2019).

[47] Audio of Senate Judiciary Committee, S.B. 33, testimony of Criminal Division Director John Skidmore, 1:37 p.m. - 1:54 p.m. (Mar. 25, 2019).

[48] *Id.* at 1:55 p.m. - 1:56 p.m. (statement of Senator Jesse Kiehl).

created "a presumption that [a personal recognizance release] is not appropriate, but that some other conditions need to be set."[49]

Senator Kiehl then asked whether S.B. 33 provides a different set of release conditions that courts should order for "more dangerous charges."[50] Director Skidmore clarified that, rather than providing a different set of release conditions for dangerous offenses, S.B. 33 affords trial courts discretion to impose any condition or combination of conditions in section (b) that the court believes are necessary to secure the defendant's appearance or performance.[51]

On May 4, 2019, S.B. 33 was incorporated into then C.S.H.B. 49,[52] and C.C.S.H.B. 49 was signed into law later that session without further amendment to AS 12.30.011(d)(2).[53]

The statute's text and legislative history make clear that the current version of AS 12.30.011(d)(2) does not require trial courts to presume that no conditions could reasonably assure the defendant's appearance of performance[54] — a finding under

---

[49] *Id.* at 1:56 p.m. - 1:58 p.m. (testimony of Criminal Division Director John Skidmore).

[50] *Id.* at 1:57 p.m. - 1:58 p.m. (statement of Senator Jesse Kiehl).

[51] *Id.* at 1:58 p.m. - 2:00 p.m. (testimony of Criminal Division Director John Skidmore).

[52] Working Draft, C.S.H.B. 49, 31st Legislature, 1st Session, § 54 (May 3, 2019); Minutes of the House Finance Committee, H.B. 49, opening remarks of Representative Tammie Wilson, at 2 (May 4, 2019). These provisions were placed in a formal draft several days later. *See* C.S.H.B. 49, 31st Legislature, 1st Session, Version C, § 54 (as introduced by the House Finance Committee, May 7, 2019).

[53] SLA 2019, ch. 4, § 59.

[54] *Cf. Hamburg v. State*, 434 P.3d 1165, 1166-67 (Alaska App. 2018).

former subsection (d)(2) that prompted trial courts to issue "no bail" orders.[55] Rather, as Director Skidmore explained, subsection (d)(2) simply requires courts to impose bail for certain offenders that are presumed to be a risk, as opposed to granting them release on their personal recognizance.[56] Accordingly, we reject Moe's claim that the current version of AS 12.30.011(d)(2) is unconstitutional.

Under the bail statute, trial courts have broad discretion to determine which bail conditions will reasonably assure a defendant's appearance and performance.[57] We acknowledge that in certain cases, a trial court may rely on the presumption in AS 12.30.011(d)(2) that a defendant poses an elevated appearance or performance risk, and then impose bail conditions that a defendant perceives to be "restrictive and onerous," as Moe argues. However, we note that there are important constitutional checks to this exercise of the court's discretion. The trial court may not impose conditions that exceed "the amount actually necessary to fulfill the purposes of

---

[55] *Id.*; *Alexie v. State*, 2017 WL 11607877 (Alaska App. Nov. 13, 2017) (unpublished bail order); *Vaneyck v. State*, 2018 WL 11409589 (Alaska App. Feb. 7, 2018) (unpublished bail order).

[56] The Alaska Supreme Court recognized long ago that the Alaska Constitution's right to be released on bail does not confer a constitutional right to be released on one's own recognizance. *See Reeves v. State*, 411 P.2d 212, 214-16 (Alaska 1966).

[57] *Pisano I*, 2018 WL 11306173, at *2 (Alaska App. May 24, 2018) (unpublished bail order).

bail,"[58] and if the court seeks to impose monetary bail above what the defendant can afford,[59] it must explain "why a particular monetary bail is necessary in a given case."[60]

*The superior court did not improperly speculate about Moe's performance risk*

Moe next claims that the superior court improperly speculated that he would violate the condition of his release that prohibits contact with minor children. Citing to this Court's decision in *Wagner v. State*,[61] Moe argues that courts must engage in a case-specific analysis of the particular defendant's risk, and that the court's concerns in his case were improperly grounded on generalizations about the nature and circumstances of his offense.

In *Wagner v. State*, the defendant was charged with attempted and completed first-degree sexual abuse of a minor for having intercourse with a seventeen-year-old foster child in his care.[62] At Wagner's felony first appearance, the court imposed a $50,000 cash performance bond.[63] Wagner applied for a bail review hearing, asking the superior court to change the cash bond to an unsecured bond and release him

---

[58] *Id.* (first citing *Stack v. Boyle*, 342 U.S. 1, 5 (1951); and then citing *Doe v. State*, 487 P.2d 47, 51 (Alaska 1971)).

[59] *Gilbert v. State*, 540 P.2d 485, 486 n.12 (Alaska 1975) (citing *Reeves v. State*, 411 P.2d 212 (Alaska 1966)).

[60] *Pisano II*, 2019 WL 12043666, at *3 (Alaska App. Jan. 16, 2019) (unpublished bail order).

[61] *Wagner v. State*, 2021 WL 1346286 (Alaska App. Jan. 14, 2021) (unpublished bail order).

[62] *Id.* at *1.

[63] *Id.*

to house arrest with electronic monitoring in Anchorage (the victim lived in Nome).[64] The court denied this proposal, ruling that electronic monitoring would not secure Wagner's performance because it could not prevent Wagner from inviting an underage person into his hotel room to have sex.[65]

We disagreed with the superior court that a high monetary bail without any electronic monitoring was safer than electronic monitoring with a lower amount of monetary bail that Wagner could afford.[66] We therefore remanded the case for reconsideration.[67] In our order, we also explained that "when a court sets bail, it must engage in a case-specific analysis of the particular case and the particular defendant."[68] We held that the court's belief that Wagner would begin preying on younger children under the age of consent was based on speculation rather than an individualized analysis of Wagner's case and circumstances.[69]

Moe argues that *Wagner* is analogous to his case and that the superior court's concern that he might contact children is improper under *Wagner*. But Moe is accused of sexually abusing a nine-year-old at knifepoint while Wagner was accused of sexually abusing a seventeen-year-old who was in his care. The allegations against Moe therefore differ from the facts in *Wagner* in two significant ways: the age of the victim and the alleged use of force.

Moreover, Moe's argument overlooks another material difference between his case and Wagner's. In Moe's case, the superior court expressly relied on

---

[64] *Id.*

[65] *Id.* at *2.

[66] *Id.* at *3.

[67] *Id.* at *4.

[68] *Id.*

[69] *Id.*

the rebuttable presumption in AS 12.30.011(d)(2) to find that Moe would be a risk to children if released on bail. By contrast, in Wagner's case, we clarified in a footnote that the trial court did *not* "rely[] on the rebuttable presumption set out in AS 12.30.011(d)(2)," but rather, made "specific findings regarding Wagner's risk of . . . danger to the community."[70]

A presumption is, by definition, "[a] legal inference or assumption that a fact exists *because of* the known or proven existence of some other fact or group of facts."[71] Once a fact or group of facts is shown, the legal inference or assumption automatically follows. Under AS 12.30.011(d)(2), the fact or group of facts that is the condition antecedent to the presumption is that "the person is . . . charged with an unclassified [or] sexual felony."[72] If a defendant is charged with a listed offense, subsection (d)(2) directs the court to infer or assume "that there is a substantial risk that the person will not appear and . . . poses a danger to the victim, other persons, or the community."[73]

In this case, Moe is charged with first-degree sexual abuse of a minor for forcing nine-year-old R.M.F. to perform oral sex. Because the superior court found that this presumption was not rebutted, the court was permitted to infer, without further individualized analysis beyond the nature of the allegations, that Moe was a danger to the community (*i.e.*, a danger to children inside and outside the Mt. Juneau facility).

---

[70] *Id.* at *1 n.1.

[71] "Presumption," Black's Law Dictionary (12th ed. 2024) (emphasis added).

[72] AS 12.30.011(d)(2)(A).

[73] *Id.*

*The superior court did not sufficiently explain why the $25,000 cash performance bond was necessary to reasonably ensure his performance*

Moe next argues that the superior court imposed a cash performance bond in an amount he cannot afford without adequately explaining why it was reasonably necessary to secure his performance.

This Court reviews a trial court's order imposing particular bail conditions for an abuse of discretion, recognizing that setting bail "is in large measure a discretionary function, and the trial court is in the best position to make this determination."[74] To permit meaningful appellate review, a trial court must provide "a sufficient explanation [for why it] . . . imposed the particular condition or conditions being challenged."[75] Further, if monetary bail is set in an amount the defendant cannot afford, the court must "provide a 'particularized statement' that addresses how the monetary amount was calculated and must directly explain 'why no less restrictive conditions will suffice.'"[76]

At Moe's third bail review hearing, the superior court found that Moe had rebutted the presumption in AS 12.30.011(d)(2) that he was a substantial appearance risk, but had not rebutted the presumption that he was a danger to the community. Accordingly, the court removed the $50,000 cash appearance bond, added a $25,000 cash performance bond, and ordered that Moe enter the Mt. Juneau treatment program, submit to electronic monitoring, and remain on house arrest.

---

[74] *Pisano I*, 2018 WL 11306173, at *2 (Alaska App. May 24, 2018) (unpublished bail order).

[75] *Id.*; *see also Pisano II*, 2019 WL 12043666, at *3 (Alaska App. Jan. 16, 2019) (unpublished bail order).

[76] *Sergie v. State*, 2021 WL 3277199, at *3 (Alaska App. July 30, 2021) (unpublished bail order) (quoting *Francis v. State*, 2021 WL 1346285, at *2 n.10 (Alaska App. Jan. 15, 2021) (unpublished bail order)).

In its bail remarks, the court acknowledged Moe's contention that he "has $1,700 to his name," but it nevertheless found that a "substantial" monetary bail was "appropriate." The court expressed concern that Mt. Juneau was an unsecured facility with no duty to report, that children were permitted as visitors to Mt. Juneau, and Moe would have access to children in the community when out on passes. The court also noted that Moe had a prior VCOR conviction. However, the court did not explain why a cash performance bond in the amount of $25,000 was necessary to reasonably ensure Moe's performance, given the restrictive non-monetary conditions that it was also imposing.

On appeal, Moe argues that the court erroneously set bail at an amount he could not afford without providing a particularized statement addressing how the monetary amount was calculated or explaining why no less restrictive conditions would suffice.[77] We agree.

As previously explained, the superior court did not err by relying on the presumption in AS 12.30.011(d)(2) to find that Moe is a danger to the community based on the specific allegations in his case. Based on these findings, the court had discretion under AS 12.30.011(b) to impose a monetary performance bond — including potentially a bond that Moe could not afford — if the bond was the least restrictive means of reasonably assuring Moe's performance. But in Moe's case, the court failed to provide a "particularized statement" explaining why a cash bond in that monetary range was warranted in addition to the non-monetary conditions that it imposed (*e.g.*, electronic monitoring with house arrest at Mt. Juneau).

Because the superior court's remarks are insufficient for us to review whether Moe's bail conditions comply with AS 12.30.011(b) and the Alaska and United

---

[77] *Id.*

States Constitutions, we remand Moe's case for further proceedings consistent with this opinion.[78]

*Conclusion*

For the reasons explained, we VACATE the superior court's bail order dated October 17, 2024, and REMAND this case for further proceedings consistent with this opinion.

---

[78] Moe also argues that the superior court abused its discretion by imposing a $25,000 cash performance bond. We decline to reach this issue because we agree with Moe that the court did not provide a sufficient explanation for why this monetary bond was needed, and we remand Moe's case to the superior court for further proceedings.